BOARD OF ZONING APPEALS OF BALTIMORE COUNTY ET AL. *v.* GUE ET AL.

[No. 207, September Term, 1957.]

*Decided May 20, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*W. Lee Harrison,* with whom were *Francis T. Peach* and *Robert E. Cahill* on the brief, for the appellants.

*Walter R. Tabler, Jr.,* for the appellees.

Prescott, J., delivered the opinion of the Court.

This case originated before the Zoning Commissioner of Baltimore County on a complaint filed by the appellees, which alleged a violation of the Zoning Regulations in that an au-

tomobile repair shop was being operated on land owned by the appellant, Daniel W. Wheeler, said land being zoned residential. The Deputy Zoning Commissioner found that the subject property had been vested with a non-conforming use, which had been discontinued by the owner, and ordered the repair shop to cease operating. The appellant herein filed an appeal to the Board of Zoning Appeals (Board), and, after a hearing, the Board, with its chairman dissenting, found that the non-conforming use had not been discontinued and reversed the order of the Deputy Zoning Commissioner. On *certiorari* to the Circuit Court, this action of the Board was reversed.

For many years prior to the adoption of the original zoning regulations in Baltimore County on January 2, 1945, a blacksmith and automobile repair shop had been conducted in a small old wooden barn on a tract of land containing 5.82 acres of which the property in question was a part. This property is located at the intersection of Nicodemus and Cherry Hill Roads in the Fourth Election District of Baltimore County. At that time, it formed, roughly, a parallelogram with its northern boundary on Cherry Hill Road and its eastern boundary (the longer) on Nicodemus Road. It was improved by an old dwelling and the barn mentioned above, both of which were close to, and had their combined entrance from, Cherry Hill Road. The automobile repair shop was carried on in the small barn, and, while the evidence is not so explicit as desirable in describing the exact operations that were carried on on the remainder of the property, it does show that parts of old automobiles (fenders, springs, cushions, etc.) were widely scattered over the property as well as tin cans and other rubbish. The appellant contends that the dismantling of the automobiles took place all over the remainder of the property in addition to the use of the old barn for the same purpose.

The appellant purchased the property in 1946 and it is claimed that tenants continued to operate an automobile repair shop in the old barn until 1948, when appellant erected a building on another part of the property (the subject of this case) to be mentioned later. Whatever their operations

were, they could not have been extensive, for the appellant stated he was only paid $10.00 as rent from 1946 to the fall of 1948. As soon as the appellant purchased the property in 1946, he began to clean it up. He gradually cleared off the rubbish and old automobile parts and in 1948 completed this cleaning process by placing all of the remaining rubbish and old automobile parts in a ravine and covering them over with soil. He made application to the Baltimore County authorities and received a permit to construct a "Garage and Farm Implement Accessory Building" on a portion of the property facing on Nicodemus Road nearly one hundred yards distant from the location of the old barn, which was close to, and had its entrance from, Cherry Hill Road. This new building was of one-story concrete block construction of the general type of a garage. Shortly after the new building was completed, the appellant tore down the old barn. The new building was rented to the Schulte Iron Works, engaged in the welding and manufacture of ornamental iron railings, until August of 1954. The new building remained vacant until December 1954, when it was rented to a Mr. Staines, who conducted an automobile repair shop on the premises until the order of the Deputy Zoning Commissioner directed him to cease his operation. In 1950, the appellant sold that portion of his land occupied by the old dwelling including the location of the old barn. The disputed area is now approximately one acre of land, surrounding the new building, that was included in the original 5.82 acres.

When Baltimore County first adopted zoning, effective January 2, 1945, its regulations (Section XI) provided that a lawful non-conforming use existing on the effective date of their adoption "may continue, provided, however, upon any change from such non-conforming use to a conforming use, or any attempt to change from such non-conforming use to a different non-conforming use or any discontinuance of such non-conforming use for a period of one year, * * * the right to continue to resume such non-conforming use shall terminate, * * *." The regulations also provided that any lawful non-conforming use may be extended or enlarged to an extent not more than "once again" the area of the land

used in the original non-conforming use. (These provisions have since been changed. See section 104.1 Zoning Regulations for Baltimore County, 1955.)

The appellant contends that the one acre in question was vested with a lawful non-conforming "light industrial" use as of January 2, 1945, the effective date of the original zoning regulations; that the business conducted by the first occupant of the new building from about 1949 to 1954, the manufacturing of ornamental railings, was a "light industrial" use; that the erection of the new building and its use was not an enlargement or extension of the non-conforming use beyond the authorization permitted in the regulations; that the automobile repair shop conducted on the property by Mr. Staines from 1954 until the passage of the order of the Deputy Zoning Commissioner in May of 1955 was an "E commercial use," which is of a higher (more restricted) classification than the preceding light industrial use. For the purposes of this case, we shall assume, without deciding, that the appellant is correct in these contentions.

He further claims, however, that under this Court's rulings in the cases of *Amereihn v. Kotras,* 194 Md. 591 (Baltimore County), and *Nyburg v. Solmson,* 205 Md. 150, 160 (Baltimore City), he did not terminate the non-conforming use when he attempted in 1954 to change from a "light industrial" to an "E commercial use," because the latter is a higher classification than the former. These cases are not available as authorities that require such a ruling. It must be remembered we are dealing with the Baltimore County regulation [1] which provided that "any attempt to change from such non-conforming use to a different non-conforming use" shall terminate the non-conforming use.

In the *Amereihn* case, *supra,* this Court dealt with the Baltimore County regulation. There the actual non-conforming use started when the owner of a building "installed machinery which was operated by electricity, and proceeded

---

1. There are many different zoning regulations in force in Maryland. In reading the decisions of this Court, care should be taken to consult the specific regulation under consideration.

*to manufacture building materials."* (Italics supplied). First the building was used for manufacturing and prefabricating work in the lumber business. Later it was utilized for making iron railings and cutting pipes for the purpose of making fence posts. On the questions of whether a valid non-conforming use ever existed (with which we are not concerned at present), and whether there had been such a change of use as to terminate the non-conforming use, this Court, in 194 Md. at page 601, stated: "We hold that * * * this property was affected by a nonconforming use; that the purpose for which the property has been devoted since then to the present time *has not changed,* and it is still affected by a nonconforming use. *The use was never changed to a higher classification* * * *."* (Emphasis added.) Whether this case is authority to establish the rule that under the regulation being considered one may change one non-conforming use to another non-conforming use so long as he does not change to another use *classification,* as claimed by the appellant, is a question we do not reach; so we do not decide the same. It is certain that the *Amereihn* case is not authority for permitting an attempt to change a non-conforming use to another non-conforming use in a different use classification, though it be to a higher classification as was done in the case at bar, without extinguishing the non-conforming use. We think that by the explicit terms of the regulation, "any attempt to change from such non-conforming use to a different non-conforming use" the non-conforming use shall cease, the non-conforming use that we have assumed affected the subject property terminated in December, 1954, when there was a change in the use authorized in the "light industrial" use classification to a use allowed in the "E Commercial Zone."

The appellant, however, argues that such a ruling as just made is inconsistent with what this Court said in *Nyburg v. Solmson, supra,* 205 Md. at page 160: "A non-conforming use may be changed to a use of the same or a higher classification." As pointed out in the footnote herein, zoning regulations vary greatly not only in the different states, but in the political subdivisions thereof. Caution dictates that the specific regulation under consideration should be examined in

analysing any court decision relating to such regulation. The above quotation from the *Nyburg* case referred to the regulation in effect in Baltimore City. It was merely repeating, in slightly different language, the explicit terms of the Baltimore City ordinance (Section 13(a)) of the Baltimore City Zoning Ordinance and State Enabling Act, (1953) which read: "A non-conforming use may be changed to a use of the same classification or to a use of a higher classification." This is entirely different from section XI of the Baltimore County regulations, and has no application to the instant case.

We, therefore, hold that the action of the Board was illegal when it concluded that the property owner "still has" a legal non-conforming use for the operating of an automobile repair shop on the subject property.

*Order affirmed, with costs.*