# PRINCE GEORGE'S COUNTY, MARYLAND *v.*
# E. L. GARDNER, INC.

[No. 385, September Term, 1980.]

*Decided January 7, 1981.*

The cause was argued before GILBERT, C. J., and LISS and WILNER, JJ.

*Steven M. Gilbert, Associate County Attorney for Prince George's County,* with whom were *Robert B. Ostrom, County Attorney for Prince George's County,* and *Michael O.*

*Connaughton, Deputy County Attorney for Prince George's County,* on the brief, for appellant.

*Paul B. Rodbell,* with whom were *William V. Meyers* and *Meyers & Billingsley, P.A.* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

This is an appeal by Prince George's County, appellant, from a final order of the Circuit Court for Prince George's County (Blackwell, J.) reversing and remanding a decision of the County Council of Prince George's County sitting as the District Council for the Maryland-Washington Regional District in Prince George's County. The case arose out of an application by the appellee, E. L. Gardner, Inc. (Gardner) for the grant of a special exception for the erection and use of a sand and gravel wet processing facility on property owned by Gardner, which Gardner has been operating as a non-conforming mining operation under the Prince George's County Zoning Ordinance.

The appeal was filed in the Circuit Court for Prince George's County from a decision of the District Council denying the special exception. The appeal to the Circuit Court was brought pursuant to Article 66D, Section 8-106 (e) of the Annotated Code of Maryland (1957, 1979 Repl. Vol.) and is governed by the provisions of Subtitle B, Chapter 1100, of the Maryland Rules of Procedure. *See County Council v. Carl M. Freeman Associates, Inc.,* 281 Md. 70, 376 A.2d 860 (1977).

Appellee Gardner is in the business of preparing ready mix concrete. Gardner manufactures its product in Clinton, Maryland but mines sand and gravel from its surface mines in Brandywine. The sand and gravel operation in Brandywine is located on the property involved in this case. Gardner applied for a special exception in order to transfer the wet processing of sand and gravel from Clinton to Brandywine. Such a special exception is allowed under the Prince George's Code, Division 36, Section 27-558.1 which is titled, "Sand and/or gravel wet processing."

The subject property, consisting of approximately 449 acres, is located one half mile east of Brandywine Road, Maryland Route 381, to the north of Keys Road. The site is unequally divided on a north-south axis by a Pepco right of way for power transmission lines. Approximately 330 acres lie to the west of the right of way and 120 acres to the east. Gardner proposed to place the wet processing facility in the smaller eastern section. The entire 449 plus or minus acre tract which is located in an O-S (open space) zone has been certified by Prince George's County as a non-conforming use for the removal of sand and gravel. Gardner extracts these materials pursuant to a surface mining permit issued by the State of Maryland. The appellee had been engaged in mining the site prior to its first being zoned in December of 1966, and has continued to do so since the adoption of the original zoning scheme.

Gardner, in seeking its special exception, filed its application pursuant to the procedures set forth in Section 27-490, *et seq.,* of the County Code. Prior to the date the application was brought to the District Council for its consideration, the Gardner application was submitted for a three step administrative review. In chronological order, the administrative review was as follows:

1. Review and report by the Technical Staff of the Planning Board which was then submitted to the Planning Board along with the staff's recommendation, Section 27-491.2 of the County Code;

2. The Planning Board while not required to hear the matter or make recommendations did so pursuant to the procedures followed for a Zoning Map Amendment, Sections 27-581 and 27-585 of the County Code. In this case the Planning Board adopted its Technical Staff's recommendation as per Section 27-581 (b);

3. The Zoning Hearing Examiner scheduled and conducted a public hearing on the application as per Sections 27-491 and 27-493, and then made a recommendation as per Section 27-565.

Upon submission of the administrative reports and recommendations to the District Council, the Council had before it the question of whether to grant or deny the application for a special exception under the standards and guidelines set forth in Sections 27-501 and 27-558.1 of the County Code. The District Council denied the application, and on appeal to the Circuit Court the presiding judge reversed the District Council and remanded the case to the Council with instructions that the special exception be granted subject to the imposition by the Council of reasonable conditions to implement the use of the property. It is from that order that this appeal has been brought by Prince George's County.

The issues to be decided by the appeal are as follows:

I. Whether the approval by the zoning authority of a separate special exception use authorized by the applicable zoning ordinance where a parcel of land is the subject of a lawful non-conforming use constitutes either an expansion or an enlargement of that non-conforming use?

II. Whether the denial of a special exception by the District Council amounts to an arbitrary, capricious and illegal act where an applicant for the special exception establishes by clear and convincing evidence that the proposed use complies with the prescribed standards and requirements of the applicable zoning ordinance?

III. Whether the issue before the administrative body as to the granting or denial of the special exception was "fairly-debatable"?

### I. and II.

The appellee in its application for a special exception sought authorization to conduct a sand and gravel wet processing operation on the subject property. The proposed use is in harmony with the purposes and intent of the Prince George's County Zoning Ordinance in that sand and gravel wet processing has been legislatively predetermined to be a

legitimate use of land in the O-S category subject to the requirements of applicable special exception provisions.

The Court of Appeals in *Rockville Fuel & Feed Co. v. Board of Appeals,* 257 Md. 183, 262 A.2d 499 (1970), set out the duty of an administrative agency in the consideration of an application for a special exception when it said:

> In *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287 [96 A.2d 261 (1953)] we went to some pains to stress that the special exception is a valid zoning mechanism that delegates to an administrative board a limited authority to permit enumerated uses which the legislative body has determined can, *prima facie,* properly be allowed in a specified use district, absent any fact or circumstance in a particular case which would change this presumptive finding. We said: "The duties given the Board are to judge whether the neighboring properties and the general neighborhood would be adversely affected, and whether the use, in the particular case, is in harmony with the general purpose and intent of the zoning plan." [257 Md. at 188.]

The appellant contends that the proposed use of the appellee's property in this case is an expansion, extension or enlargement of an existing non-conforming use and is, therefore, contrary to the purposes and requirements of the zoning ordinance. Appellee, on the other hand, urges that the special exception which it seeks in this case makes irrelevant the question whether the activity proposed is an extension, expansion or enlargement of the existing non-conforming use.

The facts are not in dispute: appellee's property has been certified as a lawful non-conforming use under the provisions of the Prince George's County Zoning Ordinance; appellee has the ongoing unrestricted legal right to extract sand and gravel from the entirety of its property as reflected in its use and occupancy permit as well as the zoning

ordinance; appellant's property contains extensive deposits of sand and gravel which the appellee is currently mining and plans to continue to mine until the subject deposits are exhausted.

We are aware that while judicial decisions are firm in the protection of vested rights, the courts and legislatures are wedded to the public policy decisions which have prompted the limitation of non-conforming uses and have generated plans for the elimination of non-conforming uses. *See* 1 Anderson, American Law of Zoning Section 6.07 (1976, 1979 Cum. Supp.)

A distinction is to be drawn between the enlargement or extension of non-conforming uses and an intensification of such lawful uses. An increase in floor space either arising from an addition to an existing building or in a separate building; an increase in the area of a lot used for non-conforming uses; or a change in business methods or the provision of new accessory facilities with the resulting extension of the use involved have all been held to be proposals for the enlargement of a non-conforming use. Conversely, an increase in the volume of an existing business is usually referred to as an intensification rather than an enlargement and such an intensification has been permitted under a valid non-conforming use. A distinction is sometimes made between extension and enlargement with the former referring to increased use of existing floor area within a building and the latter to the construction of a larger building. *See* 4 Williams, American Land Planning Law Sections 113.01 and 113.06 (1975, 1979 Cum. Supp.). Furthermore, an unlawful extension or enlargement of a non-conforming use may be effected by the addition of new equipment or facilities, or their enlargement. *See Seekonk v. Anthony,* 339 Mass. 49, 157 N.E.2d 651 (1959), where the right to maintain a non-conforming quarry did not include the right to expand the use by adding a non-conforming blacktop facility. *Accord First Crestwood Corp. v. Building Inspector of Middleton,* 326 N.E.2d 363 (1975, Mass. App.), where the addition of a stone crushing process to a non-conforming quarrying operation was held an unlawful

enlargement. *See also* 1 Anderson, American Law of Zoning Section 6.44.

If the controversy here considered involved only the question whether the contemplated use of the land owned by the appellee amounted to an *illegal* enlargement or expansion of its non-conforming use of the premises, it would not present a difficult question to be decided. The problem in this case, however, is that the proposed use of the appellee's property does not depend on the non-conforming use, but rather on the right to a special exception established by the Prince George's County Zoning Ordinance.

The appellee's property is classified in the O-S zone, the stated purposes of which are to provide for low density and low development intensity uses. The ordinance sets out a number of special exception uses which are by definition uses of extremely limited duration. These include temporary sawmills (subject to annual renewal); various types of shooting ranges (subject to annual renewal); and the specific use here involved, wet processing plants which are subject to a term of 20 years.

The record discloses that both the appellee's expert land use planner and the technical staff of the Planning Commission of Prince George's County stated that the proposed use was in accordance with and satisfied the technical requirements of the zoning ordinance and the guidelines and standards set out in that ordinance. In addition, the expert testimony indicated that the use would serve the public purpose contemplated by the creation of the special exception provision as well as serving the expressed public purpose of facilitation of the extraction of natural resources.

Under the circumstances revealed by the record, we agree with the appellee that the non-conforming use status of the appellee's property is irrelevant in the determination of this controversy.

### III.

The sole question to be answered in this appeal then is whether Judge Blackwell erred in concluding that based on

the evidence before the District Council the record did not raise an issue before the administrative body which was "fairly debatable."

Given the "legislative predetermination" that a special exception is "conditionally compatible," it is the duty of the District Council to determine whether the special exception under review does meet the specified statutory requirements in that the use contemplated not adversely affect the neighboring properties and general neighborhood scheme and that the special exception be in harmony with the general purpose and intent of the zoning plans. *See Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712, 264 A.2d 838 (1970); *Rockville Fuel & Feed Co. v. Board of Appeals, supra.*

. The Court of Appeals in *Sembly v. County Board of Appeals,* 269 Md. 177, 304 A.2d 814 (1973), stated the rule governing the judicial review of decisions granting or denying special exceptions as follows:

> We have consistently held that on judicial review of decisions granting or denying special exceptions, the correct test to be applied is whether the issue before the administrative body is "fairly debatable", that is, whether its determination is based upon evidence from which reasonable persons could come to different conclusions. If the questions are fairly debatable and the facts presented are sufficient to support the Board's decision, it must be upheld. [citations omitted]. Hence, where we conclude that the issues are fairly debatable, we will not substitute our judgment for that of the administrative body, unless its action is shown to be arbitrary, capricious or illegal. [Citations omitted.] [269 Md. at 182-83.]

The task of the reviewing court is to examine any conclusion reached by the (administrative) agency, to see whether a reasoning mind could reasonably have reached the result the agency reached upon consideration of the ... entire record. *Cason v. Board of County Commissioners,* 261 Md. 699, 707, 376 A.2d 661 (1971); *Board of County*

*Commissioners v. Oak Hill Farms, Inc.,* 232 Md. 274, 283, 192 A.2d 761 (1963).

Judge Blackwell in his memorandum opinion painstakingly reviewed the evidence in the record regarding the six conclusions reached by the District Council. Those conclusions were: (1) that based on the evidence submitted in support of and in opposition to the special exception sought that the applicant had failed to meet the requirements of Section 27-501 (2) of the County Code; (2) that the restriction suggested by the Technical Staff and Zoning Hearing Examiner that appellee's ingress and egress to the property would be difficult to enforce; (3) that the noise generated and the water needed for the wet processing operation would adversely affect the neighborhood; (4) that the applicant failed to show it was entitled to a variance in complying with the requirements of Sections 27-358 (a) (1) and (3) of the Prince George's County Code; (5) that to grant appellee's special exception would be an "unwarranted extension and expansion" of the appellee's non-conforming use; (6) and for other reasons apparent in the record.

The trial judge analyzed the evidence submitted by the appellee and by the several protestants and came to the conclusion that the evidence in the record failed to trigger the "fairly debatable" test. We agree.

The Court of Appeals in *Turner v. Hammond,* 270 Md. 41, 310 A.2d 543 (1973), considered the nature of the law governing special exceptions and stated it to be as follows:

> Occasionally the bar and less often the bench lose sight of the concept that the conditional use or special exception, as it is generally called, is a part of the comprehensive zoning plan sharing the presumption that as such it is in the interest of the general welfare, and therefore, valid. [Citation omitted.] The special exception is a valid zoning mechanism that delegates to an administrative board a limited authority to permit enumerated uses the legislature has determined can be allowed, properly albeit prima facie, absent any fact or cir-

cumstance negating the presumption. [Citation omitted.] In *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261, 264 (1953), we said:

". . . The duties given the Board are to judge whether the neighboring properties and the general neighborhood would be adversely affected, and whether the use in the particular case, is in harmony with the general purpose and intent of the zoning plan."

While the applicant has the burden of adducing testimony which will show that his use meets the prescribed standards and requirements he does not have the burden of showing affirmatively that his proposed use accords with the general welfare. If he shows to the satisfaction of the Board that the proposed use would be conducted without real detriment to the neighborhood and would not actually adversely affect the public interest, he has met his burden. The extent of any harm or disturbance to the neighboring area and uses is, of course, material but if there is no *probative* evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the functioning of the comprehensive plan, a denial of an application for a special exception is arbitrary, capricious and illegal. [270 Md. at 54-55.]

Our examination of the record convinces us that the applicant more than met its burden of producing probative and credible evidence on all the issues required to be proven, and that the evidence of the protestants was so vague and indefinite as to fail to raise fair debate in a reasoning mind. Therefore, we find that the action of the District Council, in refusing to grant the special exception was arbitrary, capricious, and illegal.

*Judgment affirmed; costs to be paid by Prince George's County.*