# COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY, MARYLAND *v.* E. L. GARDNER, INC.

[No. 11, September Term, 1981.]

*Decided April 2, 1982.*

*Motion for reconsideration filed April 30, 1982; denied May 6, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Steven M. Gilbert, Associate County Attorney,* with whom were *Robert B. Ostrom, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellant.

*Paul B. Rodbell,* with whom were *William V. Meyers* and *Meyers & Billingsley, P.A.* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents a question concerning nonconforming uses. More particularly, it involves the question whether, under the applicable provisions of the Prince George's County Code (1979), Subtitle 27.Zoning, the owner of a nonconforming surface mining sand and gravel operation can obtain a special exception to operate a sand and gravel wet-processing facility at the same location. The relevant provisions of the Prince George's County Code are as follows.

Section 27-101 provides in pertinent part:

"(a) Terms used in this Subtitle are defined as follows:

. . .

"(110.1) Nonconforming Building or Structure: Any building or structure not in conformity with a regulation of the zone in which it is situated, which regulation was adopted subsequent to the lawful erection of such building or structure. . . .

"(111) Nonconforming Use: Use of any building, structure, or land, or portion thereof, not in conformity with a regulation of the zone in which it is situated, including any regulation of Division 36 [Special Exceptions] applicable to said use, which regulation was adopted subsequent to the lawful establishment of such use. . . . The term 'nonconforming use' shall be deemed to include any building, structure, or other facility utilized in connection with a nonconforming use. . . .

. . .

"(152) Use: The principal purpose for which a lot, and/or the main building thereon, is designed, arranged, or intended and for which it may be used, occupied, or maintained."

Section 27-107 (a) provides:

"(a) *Any nonconforming* building, structure, or *use,* as defined in Section 27-101, *may be continued,*

repaired, or maintained *without enlargement or extension,* unless otherwise provided by this Subtitle." (Emphasis added.)

Section 27-107 (e) provides in pertinent part:

"(e) *No nonconforming use may be changed to any use other than that provided by ... permits under which the nonconforming use operated* at the time the nonconforming use was established." (Emphasis added.)

Section 27-108 (a) provides in pertinent part:

"(a) *A nonconforming* building, structure, or *use may only be enlarged or extended if* such enlargement or extension shall conform to the provisions of this Subtitle for the zone in which it is located and *a special exception has been approved by the District Council,* as provided in Division 36 [Special Exceptions] of this Subtitle." (Emphasis added.)

Section 27-482 (a) provides in pertinent part:

"(a) *Any nonconforming* building, structure, or *use* as defined in Section 27-101, *may be continued,* subject to the regulations of Section 27-107, *and may be structurally expanded or extended,* subject to the provisions of Division 36 [Special Exceptions] of this Subtitle." (Emphasis added.)

Section 27-553 provides in pertinent part:

"(a) *Any nonconforming* building, structure, or *use,* as defined in Section 27-101 herein ... *may be enlarged, extended, or demolished and reconstructed,* if the applicant can show generally that such enlargement, extension, or reconstruction will not adversely affect the use of adjacent properties and the neighborhood, subject to the following requirements and conditions:

"(1) A nonconforming building or structure, or a

building or structure utilized in connection with a nonconforming use, may be enlarged in height or bulk. . . .

"(2) A nonconforming use may be extended throughout a part or whole of a building in which such nonconforming use lawfully exists, or to the bounding lot lines of the lot. . . .

"(3) A nonconforming use may be reconstructed within the bounding lot lines of the lot. . . .

"(4) Any addition to an existing building or structure. or any new building or structure, constructed in connection with a nonconforming use shall, at a minimum, conform to the requirements relative to building lines, setbacks, yards, and height limits in the zone in which such nonconforming use is situated. . . ." (Emphasis added.)

The respondent, E. L. Gardner, Inc. (owner), owns approximately 450 acres of land (subject property) located in Prince George's County. The subject property was originally zoned R-R (rural-residential, 15,000 square foot minimum lot size) by the comprehensive zoning map adopted 2 December 1966. It was reclassified to the O-S zone (open space, single-family residential, 5 acre minimum lot size) by the comprehensive zoning map adopted 12 July 1977. Neither a sand, gravel or clay pit, nor a wet-processing facility is a permitted use in the O-S zone. Both, however, are special exception uses in that zone. § 27-537 (a) (1) and § 27-538.1 (a).[1]

---

1. § 27-537 (a) (1) provides:

"Sec. 27-537. *Sand, gravel or clay pits;* rock or stone quarries; mining removal of earth or topsoil; extraction and removal of natural materials or deposits.

"(a) In all zones, the use of land for any or all of the purposes or uses of this Section, subject to the following conditions:

"(1) Except in the I-2 Zone *there shall be no use of heavy machinery for washing, refining, or other processing or manufacturing,* unless a special exception is granted for sand and gravel wet processing under the provisions of Section 27-538.1. The use of heavy machinery for extraction and

Before the subject property was zoned, it was used for the mining of sand and gravel. This use has been established as a legal nonconforming use by the issuance of a use and occupancy permit. § 27-108 (b).[2] In 1977, an application was filed, pursuant to § 27-538.1, for a special exception for the wet processing of sand and gravel.

The technical staff of the Maryland-National Capital Park and Planning Commission and the Prince George's County Planning Board recommended approval, with conditions, as did the Zoning Hearing Examiner. Thereafter, the County Council sitting as the District Council for Prince George's County (Council) rejected those recommendations and entered an order denying the requested special exception. In its written findings and conclusions, the Council, among other things, said:

"5. Council further concludes that to grant this special exception would be an unwarranted extension and expansion of a nonconforming use, contrary to the provisions of COUNTY CODE Sect. 27-107. This proposed sand and gravel processing facility would obviously encourage the further continuation of sand and gravel extraction operations, contrary to the purposes of the County's

---

removal of natural material or deposits from the site is permissible." (Emphasis added.)

§ 27-538.1 (a) provides in pertinent part:

"Sec. 27-538.1. *Sand and/or gravel wet-processing. . . .*

"(a) In all zones, except the I-3 and I-4 Zones wherein such uses are prohibited, and in the I-2 Zone wherein such uses are permitted, the use of land for wet-processing, including washing, sorting, refining, and stockpiling of natural materials, and in the I-2 Zone only, including such facilities as concrete batching plants, asphalt or cement mixing plants, and similar facilities. . . ." (Emphasis added.)

**2.** § 27-108 (b) provides in pertinent part:

"(b) *Satisfactory evidence as to the actual existence of a nonconforming use is a prerequisite to its continuance and shall be established by the issuance of a use and occupancy permit* by the Building Inspector upon approval and certification by the Planning Board." (Emphasis added.)

Zoning Ordinance, which has the object of discouraging nonconforming uses."

The owner appealed to the Circuit Court for Prince George's County which reversed the action of the Council. In its opinion the trial court said:

"Penultimately, the District Council concluded that to grant Gardner's special exception would be an 'unwarranted extension and expansion' of the Petitioner's nonconforming use, and would be contrary to § 27-107 of the County Code.

. . .

"The Court notes that enlargement or extension of a nonconforming use is contemplated by the Code, and that the criteria for a 'permitted' enlargement or extension are set forth in § 27-553 of the Code. However, the Court finds that the requested special exception is not an extension or enlargement as contemplated by the Code, see § 27-533, but rather an intensification of Gardner's ongoing nonconforming use."

The Council appealed to the Court of Special Appeals which affirmed the judgment of the trial court. *Prince George's County v. E. L. Gardner, Inc.,* 47 Md.App. 471, 424 A.2d 392 (1981). In its opinion, that Court said:

"If the controversy here considered involved only the question whether the contemplated use of the land owned by the appellee amounted to an illegal enlargement or expansion of its non-conforming use of the premises, it would not present a difficult question to be decided. The problem in this case, however, is that the proposed use of the appellee's property does not depend on the non-conforming use, but rather on the right to a special exception established by the Prince George's County Zoning Ordinance.

. . .

"Under the circumstances revealed by the record, we agree with the appellee that the non-conforming use status of the appellee's property is irrelevant in the determination of this controversy.

. . .

"The sole question to be answered in this appeal then is whether [the trial court] erred in concluding that based on the evidence before the District Council the record did not raise an issue before the administrative body which was 'fairly debatable.'

. . .

"Our examination of the record convinces us that the applicant more than met its burden of producing probative and credible evidence on all the issues required to be proven, and that the evidence of the protestants was so vague and indefinite as to fail to raise fair debate in a reasoning mind. Therefore, we find that the action of the District Council, in refusing to grant the special exception was arbitrary, capricious, and illegal." *E. L. Gardner, Inc.,* 47 Md.App. at 477-78, 480, 424 A.2d at 395-97.

The Council filed a petition for a writ of certiorari that we granted. We shall reverse the judgment of the Court of Special Appeals.

One of the basic tenets of zoning is that some uses of land are incompatible with others, and that more efficient employment of land resources is achieved if such incompatible uses are separated. An admixture of incompatible land uses is avoided by dividing the community into use districts, each restricted to industrial, commercial or residential occupation.

As a practical matter, however, homogeneous land use has not been achieved. Major movement of population from rural to urban areas had begun half a century before the first comprehensive zoning ordinance was enacted in the United States. As a result, land to be zoned was not always vacant.

Indeed, frequently it was occupied by landowners who had developed their land unfettered by any significant degree of governmental control. Thus, use districts, designed to be homogenous, unavoidably include land devoted to uses proscribed by the zoning regulations. Such nonconforming uses pose a formidable threat to the success of zoning. They limit the effectiveness of land use controls, contribute to urban blight, imperil the success of the community plan, and injure property values. 1 R. M. Anderson, *American Law of Zoning* § 602 (2d ed. 1976).

This Court has repeatedly recognized that one of the fundamental problems of zoning is the inability to eliminate incompatible nonconforming land uses. In *Grant v. Mayor and City Council of Baltimore,* 212 Md. 301, 307, 129 A.2d 363, 365 (1957), this Court said:

> "Nonconforming uses have been a problem since the inception of zoning. Originally they were not regarded as serious handicaps to its effective operation; it was felt they would be few and likely to be eliminated by the passage of time and restrictions on their expansion. For these reasons and because it was thought that to require immediate cessation would be harsh and unreasonable, a deprivation of rights in property out of proportion to the public benefits to be obtained and, so, unconstitutional, and finally a red flag to property owners at a time when strong opposition might have jeopardized the chance of any zoning, most, if not all, zoning ordinances provided that lawful uses existing on the effective date of the law could continue although such uses could not thereafter be begun. Nevertheless, the earnest aim and ultimate purpose of zoning was and is to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned, and the ordinances forbid or limit expansion of nonconforming uses and forfeit the right to them upon abandonment of the use or the destruction of the improvements housing the use."

Thus, this Court has recognized that the problem inherent in accommodating existing vested rights in incompatible land uses with the future planned development of a community is ordinarily resolved, under local ordinances, by permitting existing uses to continue as nonconforming uses subject to various limitations upon the right to change, expand, alter, repair, restore, or recommence after abandonment. Moreover, this Court has further recognized that the purpose of such restrictions is to achieve the ultimate elimination of nonconforming uses through economic attrition and physical obsolescence. *The Arundel Corp. v. Board of Zoning Appeals of Howard County,* 255 Md. 78, 83-4, 257 A.2d 142, 146 (1969); *Stieff v. Collins,* 237 Md. 601, 604, 207 A.2d 489, 491 (1965); *Colati v. Jirout,* 186 Md. 652, 655, 657, 47 A.2d 613, 614-15 (1946); *Beyer v. Mayor of Baltimore,* 182 Md. 444, 446, 34 A.2d 765, 766 (1943); *See Kastendike v. Baltimore Ass'n for Retarded Children, Inc.,* 267 Md. 389, 397, 297 A.2d 745, 749-50 (1972).

Whether a nonconforming use can be changed, extended, enlarged, altered, repaired, restored, or recommenced after abandonment ordinarily is governed by the provisions of the applicable local ordinances and regulations. *Feldstein v. LaVale Zoning Board,* 246 Md. 204, 211, 227 A.2d 731, 734 (1967); *Phillips v. Zoning Comm'r of Howard County,* 225 Md. 102, 109, 169 A.2d 410, 413 (1961); *Board of Zoning Appeals of Baltimore County v. Gue,* 217 Md. 16, 21-22, 141 A.2d 510, 513 (1958). These local ordinances and regulations must be strictly construed in order to effectuate the purpose of eliminating nonconforming uses. *Mayor of Baltimore v. Byrd,* 191 Md. 632, 638, 62 A.2d 588, 591 (1948); *Colati,* 186 Md. at 658-59, 47 A.2d at 616; *Knox v. Mayor of Baltimore,* 180 Md. 88, 96, 23 A.2d 15, 18 (1941); *see City of Hagerstown v. Wood,* 257 Md. 558, 563, 263 A.2d 532, 534 (1970); *Hewitt v. County Comm'rs of Baltimore County,* 220 Md. 48, 59, 151 A.2d 144, 150 (1959).

Applying these principles to the instant case produces a clear result. Section 27-107 (a) provides that any nonconforming use may be continued without enlargement

or extension. Section 27-107 (e) explicitly provides that "no nonconforming use may be changed to any use other than that provided by . . . permits under which the nonconforming use operated." Section 27-108 (a) provides that a nonconforming use may be enlarged or expanded if a special exception is obtained. Sections 27-482 (a) and 27-553 (a) provide that a nonconforming use may be structurally expanded or extended subject to certain structural requirements. These provisions embody a statutory scheme that explicitly prohibits an existing nonconforming use from being changed to any other use while it explicitly permits an existing nonconforming use to be enlarged or extended under specified circumstances. Under the applicable local ordinances, there is, therefore, a significant and critical difference between changing an existing nonconforming use to another use and enlarging or extending an existing nonconforming use.

Here the record shows that a sand and gravel mining operation existed on the subject property before zoning was applicable. This use has been established as a legal nonconforming use by the issuance of a use and occupancy permit. Section 27-537 delineates sand, gravel, and clay pits as a separate and distinct special exception use in which heavy machinery for washing or processing is explicitly prohibited unless a special exception for wet processing is obtained. Section 27-538 delineates wet-processing facilities as a separate and distinct special exception use. Each of these uses has differing standards, regulations, and requirements. Thus, there can be no question that the ordinance itself establishes that these two uses are indeed different. Consequently, the addition of the wet-processing facility to the existing nonconforming sand and gravel mining operation necessarily involves a change in the use of the subject property. Such a change in use is explictly prohibited by § 27-107.

Under the circumstances here, the Council had no authority to grant the requested special exception. The trial court erred when it reversed the Council's denial of the requested

special exception. Accordingly, we shall reverse the judgment of the Court of Special Appeals that affirmed the judgment of the trial court.

> *Judgment of the Court of Special Appeals reversed.*
> *Case remanded to that Court with directions to reverse the judgment of the Circuit Court for Prince George's County and to remand the case to that Court with directions tó enter an order affirming the decision of the County Council of Prince George's County.*
> *Costs to be paid by appellee.*