824 A.2d 977

TRIP ASSOCIATES, INC. et al,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE.

No. 1733 Sept.Term 2001.

Court of Special Appeals of Maryland.

May 28, 2003.

168

John A. Austin, Towson, for appellants.

Sandra R. Gutman, Chief Solicitor (Thurman W. Zollicoffer, Jr., City Solicitor on the brief), Baltimore, for appellee.

Argued before Krauser, Barbera, Theodore G. Bloom (retired, specially assigned).

KRAUSER, Judge.

"Club Choices" is a night club, featuring adult entertainment, in Baltimore City, Maryland. It is owned and operated

by Anthony Dwight Triplin and his company, Trip Associates, Inc. The Club has presented adult entertainment, two nights a week, for over two decades. There is no question that that is a lawful non-conforming use of those premises—at least, as we shall see, for two nights a week.

In April 2000, Triplin received a zoning violation notice for providing this form of entertainment on a portion of the Club's premises without a license. The notice ordered the Club to discontinue it until one was obtained. The notice was issued by the office of the Zoning Administrator on behalf of the Mayor and City Council of Baltimore ("the City"). Triplin demurred, filing an appeal with the Board of Municipal and Zoning Appeals ("Board").

After a public hearing, the Board found that Triplin had established a nonconforming use of the premises for adult entertainment but, to Triplin's chagrin, limited that use to no more than its current level of two nights a week. When the Circuit Court for Baltimore City affirmed the Board's decision, Triplin noted this appeal.

Triplin presents two issues for our review. Reworded, they are:

I. Whether the Board erred as a matter of law in placing the two nights per week restriction on Triplin's nonconforming use.

II. Whether the circuit court erred in deciding, *sua sponte*, an issue not presented to the Board—namely, whether Triplin was required to obtain an adult entertainment license.

For the reasons that follow, we shall hold that the Board properly limited the adult entertainment offered by Triplin's Club to two nights a week, but that the circuit court erred in ordering Triplin to obtain a license.

### Facts

Triplin and the City have submitted, with their briefs, a "Joint Statement of the Case in lieu of a Joint Record Ex-

tract." Md. Rule 8–413(b).[1] According to that statement, on April 14, 2000, a Baltimore City zoning inspector issued a "Code Violation Notice And Order" to Anthony Dwight Triplin, operator of a nightclub, known as "Club Choices," and located at 1815–17 N. Charles Street in the B–5–1 Zoning District.

The violation notice was issued for "[u]sing [a] portion of the premises for adult entertainment without first obtaining proper Adult Entertainment Ordinance and Adult Entertainment License."[2] Aggrieved by the Zoning Administrator's decision to issue the violation notice, Triplin appealed that decision to the Board.[3] In doing so, Triplin sought the Board's approval

---

1. Maryland Rule 8–413(b) provides:

    If the parties agree that the questions presented by an appeal can be determined without an examination of all the pleadings and evidence, they may sign and, upon approval by the lower court, file a statement showing how the questions arose and were decided, and setting forth only those facts or allegations that are essential to a decision of the questions. The parties are strongly encouraged to agree to such a statement. The statement, the judgment from which the appeal is taken, and any opinion of the lower court shall constitute the record on appeal. The appellate court may, however, direct the lower court clerk to transmit all or part of the balance of the record in the lower court as a supplement to the record on appeal. The appellant shall reproduce the statement in the appellant's brief, either in lieu of the statement of facts or as an appendix to the brief.

2. The notice stated: "This notice cites violation of Baltimore City Codes and Ordinances as indicated below. You are hereby ordered to obtain any required permit and to correct the cited conditions before the designated completion date.... Failure to correct each violation in the time and manner prescribed is a criminal misdemeanor subject to a fine of $500.00 per day for each violation." The following "Zoning Violation" appears at the bottom of the notice:

    Using portion of premises for adult entertainment without first obtaining proper Adult Entertainment Ordinance and Adult Entertainment License. DISCONTINUE SAID USE. REMOVE ALL STOCK, MATERIAL, EQUIPMENT, AND ANY ADVERTISING SIGNS ASSOCIATED WITH SAID USE. OBTAIN CERTIFICATE OF OCCUPANCY BEFORE RE-ESTABLISHING ANY USE. [SEC. 3405.2, B.C.–107.] B.C.–11.0–2D ZO.

3. Section 17–201 of the Baltimore City Zoning Code (2000) provides that "[a] decision of the Zoning Administrator, including the issuance of

of his use of a "portion of [his] premises for Adult Entertainment." [4] That appeal was heard by the Board on October 3, 2000.

At that hearing, Anthony Triplin testified that he has owned Club Choices "[s]ince approximately January of 1983" and, from that time on, the Club has continuously presented dancing shows with partial nudity. Moreover, according to Mr. Triplin, the Club had featured adult entertainment for five years before his acquisition of the property. At the time he purchased it, Triplin stated, "[i]t was a nightclub ... with various acts, entertainment acts and also was even doing some nude male and female dancing."

Upon purchasing the Club, Triplin made some changes. "I did not want the nudes," he stated, "so I did exotic a couple of, a couple of hours two times a week and did more like jazz, top 40 bands, comedy, dancing and then later moved into an after-hour use as well." After the Board approved Triplin's use of the premises for an after-hours club [5] in 1992, he presented exotic dancing exclusively in the after-hours club. At the time of the violation hearing, Triplin's Club offered adult entertainment two nights a week: every Wednesday and Friday night for two hours each night. Two employees of the Club, Gregory Gee and Charles Watkins, testified that adult entertainment had been presented at the Club before Triplin's purchase; that after Triplin's purchase of the Club, stripping with

---

a violation notice under Subtitle 1 of this title, may be appealed to the Board by: (1) any person aggrieved by the decision."

4. "Adult entertainment" means, in part, entertainment "in which individuals appear for public view in a state of nudity or partial nudity." Balt., Md., City Zoning Code § 1–106(a)(2)(i). "Adult-entertainment business" is "any cabaret, lounge, night club, modeling studio, or other establishment whose major business is offering its customers adult entertainment." *Id.* § 1–106(b).

5. An "after-hours establishment" means "any banquet hall, dance hall, meeting hall, private club or lodge, or similar place that remains open after 2 a.m. on any day" and "includes a restaurant that provides live entertainment or dancing and remains open after 2 a.m. on any day." City Zoning Code § 1–107(a),(b).

full nudity was scaled back to exotic dancing with partial nudity; and that the Club has presented exotic dancing with partial nudity two nights a week since 1983.

After the hearing, the Board, on October 12, 2000, found that "a nonconforming use of the premises for adult entertainment had been established prior to Ordinance 443 (adult entertainment business approved December 15, 1994) and may be continued under section 13–402 of the Zoning Code."[6]

On October 27, 2000, Triplin filed a petition in the Circuit Court for Baltimore City, requesting judicial review of the Board's decision. After a hearing, the circuit court affirmed the Board's decision. Unhappy with that result, Triplin filed a motion for reconsideration, claiming that the circuit court's affirmance was based on its review of the wrong Board decision. Triplin claimed that "[t]he court appeared to be reviewing and considering an earlier decision of the Board of March 9, 1992 and not the decision of October 12, 2000 in reaching its decision."[7]

On June 14, 2001, the circuit court held a second hearing. Following that hearing, the court found that the Board had the authority to impose the two nights per week restriction on Triplin's use of the premises for adult entertainment. In addition, the court ruled that "[Triplin] must apply for and obtain all necessary and relevant licenses required by the City for the operation of an adult entertainment business."

---

6. City Ordinance No. 443 declared that any adult entertainment business existing on December 15, 1994, and located in the B–5 Central Commercial District, "shall be considered a nonconforming use and subject to all Class 3 regulations." Section 13–402 of the Zoning Code grants the Board the authority to continue a Class III nonconforming use.

7. In that 1992 decision, the Board approved Triplin's use of the first, second, and third floors of the Club, then known as "Gatsby's," for an after-hours establishment.
The Zoning Code distinguishes Class III nonconforming uses from Class I (nonconforming uses of land) and Class II (nonconforming structures). §§ 13–201, 301.

Triplin then filed a motion to revise, claiming that the court erred in interpreting "the various zoning ordinances in question." Specifically, he asserted that the circuit court had "confused, in a fundamental way, the concept of non-conforming use and conditional use" in stating that "the Board found a non-conforming conditional use of the premises for adult entertainment." On August 15, 2001, the circuit court conducted another hearing to address that issue. After that hearing, the court issued an opinion affirming the Board's decision for the third and last time. This appeal followed.

## Discussion

### I.

The Board's decision to restrict the Club's presentation of adult entertainment to its present level of adult entertainment to two nights a week is, Triplin claims, "plain error as a matter of law." According to Triplin, the Board's decision "has the effect of vitiating Triplin's non-conforming use and constitutes an impermissible restriction of Triplin's constitutional right to continue the use of the premises that has existed for many years." We disagree.

Title 13 of the Baltimore City Zoning Code (2000) "provides for the regulation of nonconforming uses and noncomplying structures" in Baltimore City. A "nonconforming use" is defined by that title as "*any lawfully existing use* of a structure or of land that does not conform to the applicable use regulations of the district in which it is located." City Zoning Code § 13–101(c) (emphasis added). And a "use" is defined by the Zoning Code as: "(1) any purpose for which a building, other structure, or tract of land can be used or occupied; and (2) any activity, occupation, business, or operation that is carried on or intended to be carried on in a building or other structure or on a tract of land." § 1–196.

Triplin's club is a Class III non-conforming use,[8] under § 13–609. That section states that "[a]ny adult-entertainment

8. Class III nonconforming uses include: "(1) any nonconforming use of all or part of a structure that was designed and erected primarily for a

business *existing on September 10, 1993* is considered a non-conforming use, subject to all Class III regulations." (emphasis added). That would, it is undisputed, include Triplin's club.

■ But the issue before us is not whether Triplin's club is a non-conforming use but whether the use of the club for adult entertainment may be limited to two nights. To answer that question, we turn to § 13-406 of the Zoning Code. That section provides that "except as authorized by the Board under Subtitle 7 {"Modifications and Continuances by Board"} a Class III nonconforming use *may not be expanded in any manner.*" (emphasis added). In limiting the presentation of adult entertainment by the club to its present level, the Board interpreted this prohibition against expanding a non-conforming use to include a temporal expansion of such a use. As an "interpretation and application" of a law which the Board administers, that decision must be given "considerable weight." *Board. of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376 (1999).

■ Once that is done, we are constrained to conclude that the Board's restriction on expanding the hours of adult entertainment at the club is permitted by that section of the Baltimore City Zoning Code. In other words, the Board's decision to limit future temporal expansions of adult entertainment by the Club was plainly not error, as Triplin claims, but in fact was consistent with the "expansion" proscription of § 13-406.

Moreover, the Board's finding that the adult entertainment offered by Triplin never exceeded more than two nights a week was supported by the evidence presented. Two employees of the Club, Gregory Gee and Charles Watkins, testified that partial nude dancing had been presented by the Club two

use that is no longer allowed in the district in which it is located; (2) any nonconforming use of the lot on which that structure is located; and (3) any nonconforming use of land or structures not regulated as Class I or Class II." City Zoning Code § 13-401.

nights a week since 1983. Triplin gave similar testimony. Therefore, the Board's decision, in effect, allowed Triplin to continue to do what he had done since he acquired the club in 1983—present partial nude dancing at his club two nights a week.

Furthermore, the Board's decision is consistent with Maryland's general and well-established policy against the expansion of nonconforming uses. "Whether a nonconforming use can be changed, extended, enlarged, altered, repaired, restored, or recommenced after abandonment ordinarily is governed by the provisions of the applicable local ordinances and regulations." *County Council v. Gardner, Inc.*, 293 Md. 259, 268, 443 A.2d 114 (1982). But "[t]hese local ordinances must be strictly construed in order to effectuate the purpose of eliminating nonconforming uses." *Id.* Indeed, limitations on the continuance of nonconforming uses are meant "to achieve the ultimate elimination of nonconforming uses through economic attrition and physical obsolescence." *Id.; see also Colati v. Jirout*, 186 Md. 652, 655, 47 A.2d 613 (1946) ("[T]he [Baltimore City] Zoning Ordinance prohibits generally the extension of a non-conforming use except to the portion of the building designed for such use at the time of the passage of the ordinance, and ... the stopping of expansion of a non-conforming use is not an arbitrary or unreasonable exercise of governmental power."); *Grant v. Mayor of Balt.*, 212 Md. 301, 307, 129 A.2d 363 (1957) ("[T]he earnest aim and ultimate purpose of zoning was and is to reduce nonconformance to conformance as speedily as possible with due regard to the legitimate interests of all concerned.").

Unfortunately, however, there is little Maryland case law on the question of the legality of a temporal expansion of an existing non-conforming use. But what is true of Maryland is not true of other jurisdictions. Indeed, a number of state courts have held, as we do today, that the general policy against the expansion of non-conforming uses applies to temporal expansions as well. *See Garb–Ko v. Carrollton Township*, 86 Mich.App. 350, 272 N.W.2d 654, 655 (1978) (holding

that township board could restrict the operating hours of nonconforming grocery store in view of the policy against expansion of nonconforming uses); *Inc. Vill. v. Hillside Ave. Rest. Corp.*, 55 A.D.2d 927, 390 N.Y.S.2d 637, 638 (App.Div. 1977) (holding that a nonconforming bar was unlawfully extended when it increased its hours of entertainment from 9:00 p.m. to 2:00 a.m. on weekends, to noon to 4:00 a.m. daily). Or have otherwise held that a non-conforming use may be temporally restricted. *See Time–Low Corp. v. City of LaPorte Bd. of Zoning Appeals*, 547 N.E.2d 877, 880 (Ind.Ct.App.1989) (holding that zoning board had authority, in approving a change to a nonconforming filling station, to restrict its hours of operation); *Cornell Uniforms, Inc. v. Township of Abington*, 8 Pa.Cmwlth. 317, 301 A.2d 113, 116 (1973) (holding that zoning board had authority to impose condition that nonconforming dry cleaning establishment must operate five days a week, from 7 a.m. to 6 p.m., since it previously operated within the same time frame).

█  Notwithstanding the strong legislative and judicial disinclination in Maryland and elsewhere to permit the expansion of non-conforming uses, Triplin claims that the Board's restriction on expanding the hours in which adult entertainment may be presented by the Club was not only unlawful but unconstitutional as well. In support of that argument, Triplin cites *Amereihn v. Kotras*, 194 Md. 591, 71 A.2d 865 (1950), for the proposition that "zoning ordinances are prospective and cannot be used to terminate a valid, existing, non-conforming use of property," and *Mayor of Baltimore v. Dembo, Inc.*, 123 Md.App. 527, 719 A.2d 1007 (1998), for the notion that his nonconforming use of the property is "a vested constitutional right that is entitled to protection as such by the courts." But Triplin fails to explain how either case advances his cause or, more specifically, casts doubt on the Board's right to maintain a two-night limit on the Club's presentation of adult entertainment. That failure is understandable as neither *Amereihn* nor *Dembo* even addresses the question of whether a zoning board may impose a temporal limitation on a nonconforming use.

And finally, Triplin argues that the Board, in deciding this case, may have confused a nonconforming use with a conditional use by imposing "conditions" on Triplin's continued use of the premises for adult entertainment. In support of this argument, Triplin claims that the language on "page 3 (paragraph 1) . . . is language that is apparently used in all conditional use approvals made by the Board" under § 14–103 of the Zoning Code. Triplin then cites *National Institutes of Health Federal Credit Union v. Hawk*, 47 Md.App. 189, 422 A.2d 55 (1980), for the proposition that nonconforming uses may not be extended, eliminated, or subjected to "conditions."

The Zoning Code states: "Certain uses exist, however, that, because of their unique characteristics, cannot properly be classified in any particular district without consideration, in each case, of the impact of those uses on neighboring land and of the public need for the particular use at the particular location. These uses, referred to as 'conditional uses', may only be approved as specified in title." § 14–101(b). The Code further provides that the Board or City Council may impose conditions, restrictions, or limitations necessary to: "(1) reduce or minimize any effect of the use on other properties in the neighborhood; (2) secure compliance with the standards and requirements of this title; and (3) better carry out the intent and purposes of this article." § 14–103(a).

An examination of the Board's written opinion quickly dispels any notion that it might have confused § 14–103 with § 13–402. In that opinion, it is clear that the Board knew that it was dealing with the continuance of a nonconforming use under § 13–402—not an approval of a conditional use under § 14–103.

Moreover, Triplin's reliance on *Hawk* is misplaced. In *Hawk*, at issue was an administrative determination that a credit union's nonconforming use of a facility as a headquarters was unlawfully extended to conducting financial transactions on the premises. On appeal, we upheld the circuit court's affirmance of the county board's decision to revoke a certificate of final inspection and occupancy. 47 Md.App. at

200, 422 A.2d 55. In affirming the circuit court, we explained that "Maryland case law permits continuing a nonconforming use, but does not permit the transmogrification of an approved non-conforming use into a new different use. The latter constitutes an unlawful extension, even if there is no outward change in the appearance of the facility being used." *Id.* We did not state in *Hawk*, as Triplin contends, that nonconforming uses may not be eliminated, extended, or subjected to conditions.

■ Before leaving this issue, we feel compelled to address, for the benefit of the circuit court, an issue that was not raised by either party. That issue is whether an increase in the number of nights that adult entertainment can be presented is an "expansion" of a nonconforming use, requiring approval, or merely an intensification of that use, requiring none. We do so because that issue will no doubt emerge in subsequent litigation between the parties. *See* Md. Rule 8–131(a) (An appellate court may decide an issue not raised below "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.").

The Court of Appeals has held that while the "basic premise underlying zoning regulations is to restrict rather than expand nonconforming uses. . . . [A]n intensification of a nonconforming use is permissible so long as the nature and character of the use is unchanged and substantially the same facilities are used." *Jahnigen v. Staley,* 245 Md. 130, 137, 225 A.2d 277 (1967) (citations omitted). That doctrine has been applied by the Court to permit a business to enclose a porch on its premises, *Helfrich v. Mongelli,* 248 Md. 498, 504, 237 A.2d 454 (1968); to boost the amount of equipment available for rental, *Jahnigen,* 245 Md. at 138, 225 A.2d 277; to store more material on its premises, *Feldstein v. Lavale Zoning Board,* 246 Md. 204, 211, 227 A.2d 731 (1967); and to increase parking on a nonconforming parking lot, *Nyburg v. Solmson,* 205 Md. 150, 161–62, 106 A.2d 483 (1954). But none of these cases involved an expansion of the temporal limits of operation. Each concerned, at most, increasing the amount of business

performed within an existing temporal framework—in other words, intensifying the use of the premises during existing business hours. Indeed, the Court has not applied this doctrine to an expansion of business hours, with one possible exception.

That exception was *Green v. Garrett*, 192 Md. 52, 63, 63 A.2d 326 (1949). More than fifty years ago, in *Green*, the Court of Appeals upheld an "enlargement" of the use of Baltimore Stadium to include "professional baseball games for a considerable period of a year," calling that increase in the nonconforming use of the Stadium a more frequent use, not an expanded one. But *Green* is of little precedential value here.

For one thing, *Green* was decided before the zoning administrative process was created. Therefore, considerations such as the deference owed an administrative body's interpretation of its governing statute and the substantial evidence rule played no role in the Court's decision. And that distinction is of particular significance in this case. As here, we have before us a governing statute, and it emphatically states that "except as authorized by the Board under Subtitle 7 {"Modifications and Continuances by Board"} a Class III nonconforming use *may not be expanded in any manner.*" (emphasis added). No exception is made for "temporal expansions." And consistent with that uncompromising language, the Board has interpreted it to apply to all expansions, temporal or otherwise. Moreover, there is nothing in the language of *Green* that can be read to prohibit all future efforts to control temporal expansions, and we decline to read such a prohibition into *Green* now.

And finally, to hold that a temporal extension of operating hours is an intensification, not an expansion, of a non-conforming use undermines governmental efforts to reconcile public policy with private interest. If we were to so rule, localities would be presented with the harsh choice of either tolerating the growth of an undesirable use or eliminating it altogether. Depriving localities, as such a ruling would, of a milder alternative—that of restricting a nonconforming use to its

current level—benefits neither the regulating locality nor non-conforming property owners, whereas holding, as we do, that the Board had a right to control temporal expansions of use accommodates the interests of both.

## II.

■ Triplin contends that the circuit court erred in ordering Triplin to obtain an adult entertainment license, as that issue had not been either raised or decided below. Triplin further claims that the licensing issue was beyond the authority of the Board because the Board had no authority to address "the licensing requirement of the adult entertainment ordinances." We agree that the circuit court erred in ordering Triplin to obtain a license.

■ By ordering Triplin to do so, the circuit court made a decision the Board did not. This it cannot do. A court reviewing an administrative agency decision "may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency." *Brodie v. Motor Vehicle Admin.*, 367 Md. 1, 4, 785 A.2d 747 (2001) (quoting *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 123, 771 A.2d 1051 (2001)).

We are not suggesting, however, that this matter should have first been decided by the Board of Municipal and Zoning Appeals, as that agency has no jurisdiction over the licensing and regulation of adult entertainment. In fact, jurisdiction over such matters was transferred, effective May 26, 1999, from the Commissioner of Housing and Community Development to the Board of Liquor License Commissioners for Baltimore City.[9] Thus, the circuit court erred in ordering

---

9. Effective May 26, 1999, the Mayor and City Council of Baltimore City, through Ordinance 99–417, transferred "the jurisdiction over the licensing and regulation of adult entertainment businesses from the Commissioner of Housing and Community Development to the Board of Liquor License Commissioners for Baltimore City." Balt. City, Md., Ordinance 99–417 (April 26, 1999). In furtherance of this transfer of

Triplin to obtain a license for adult entertainment business. We therefore vacate the judgment of the circuit court in so far as it ordered Triplin to obtain such a license.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY REQUIRING THAT APPELLANT OBTAIN AN ADULT ENTERTAINMENT LICENSE VACATED; JUDGMENT OTHERWISE AFFIRMED. COSTS TO BE SPLIT EVENLY BETWEEN THE PARTIES.**

---

regulatory authority, the Mayor and City Council repealed "Section 11.0–8 of Article 30—Zoning of the Baltimore City Code," titled "Adult entertainment businesses," and added subtitle 1, "Adult Entertainment Businesses", to Article 15 of the Baltimore City Code, titled "Licensing and Regulation." Ordinance 99–417 §§ 1,3.