(Decided Oct. 29th, 1861.)

THE BORDEN MINING COMPANY *vs.* JOHN BARRY.

Upon appeal from a judgment of a justice of the peace, the cause is taken up *de novo* in the circuit court, and disposed of in the same manner as if no judgment had been rendered.

On such an appeal, the plaintiff may abandon his suit, or suffer *non pros.* as in an original action, and the court has full authority to *reverse* the judgment *without prejudice*, which leaves the plaintiff *in statu quo.*

The fact that the circuit court, on appeal from a judgment of a justice against the defendant, entered, on motion of the plaintiff, against the remonstrance of the defendant, the judgment reversed without prejudice, is no bar to another suit by the plaintiff on the same cause of action.

In an action for breach of a contract to employ the plaintiff's boat to carry coal on the canal during the boating season of 1859, the defendant offered evidence that the canal company allowed a greater depth of water in the canal during the season of 1859, so that the plaintiff's boat could and did carry from nine to ten tons *more* per load than it had been able to carry in previous seasons. HELD:

That this evidence was irrelevant; it could not diminish the damages claimed by the plaintiff, nor inure in any way to the benefit of the defendant; on the contrary, if it could have any effect, it would be to increase the damages.

Declarations of the defendant's agent, not made in the presence of either the plaintiff or his witness, who was sought to be impeached, could not affect the rights of the plaintiff, nor tend to contradict or disprove the testimony of his witness, and were therefore irrelevant.

Borden Mining Co. *vs.* Barry.

After defendant's failure to freight and employ plaintiff's boat, according to contract, it was plaintiff's duty, in law, to use all reasonable and proper exertions in the use and disposition of his boat, stock, and hands, to save himself from loss, or render the same as light as possible, but he was not bound to keep his boat and horses unemployed, and to dismiss his hands.

The declaration stated, that in consideration that the plaintiff would run his canal-boat in defendant's line of boats, in freighting coal for it, it, the defendant, promised to *employ* the boat during the entire season, and pay the plaintiff freight *at the rate of* $1.15 *per ton:—breach*, that the defendant wholly *neglected to load and unload the boat.* The *proof* showed that the rate of freight was $1.15 per ton, or *current rates*, and that the *current rates* were, in fact, $1.15 per ton. HELD:

1st. It was not necessary, for the maintenance of this action, to set out in the *narr.* the rate of freight agreed to be paid, the suit not being for freight earned, but for a breach of the contract, in failing to load and unload the boat.

2nd. That part of the contract which constituted the ground or gravamen of the action, is properly stated, as also the consideration for the defendant's promise, and this is all that the rules of pleading require.

3rd. Even if it be conceded that the plaintiff having undertaken to set out the rate of freight, which he need not have done, he must allege it as proved, and that a *material* variance would be fatal, still there is no *substantial* variance in this case.

4th. The rule of pleading is, that a contract must be stated according to its legal operation, and if the evidence proves it according to that legal operation, it is sufficient.

APPEAL from the Circuit Court for Allegany county.

*Action,* brought on the 3rd of October 1859, by the appellee against the appellant.

The first, second, third and fourth counts of the declaration set out a special contract, that in consideration that the plaintiff would run his canal-boat in the defendant's line of boats, in freighting and carrying coal for it, on the Chesapeake and Ohio Canal, from Cumberland to Alexandria, during the whole boating season, for the year 1859, the defendant promised to employ the boat during the entire season, and to pay the plaintiff freight at the rate of one dollar and fifteen cents per ton:—*breach*, that the defendant wholly neglected and refused to load and unload the boat, and improperly discharged it before the boating season was over. To these

counts the defendant pleaded, 1st, that it did not promise as alleged, and 2nd, a prior suit for the *same cause* of action before a justice of the peace, and the judgment of the justice, the appeal therefrom to the circuit court, and the proceedings thereon in that court, which are fully stated in the opinion of this court. The plaintiff joined issue upon the first plea, and demurred to the second, which demurrer was sustained by the court. The case was then tried upon the other issues, in the course of which three exceptions were taken by the defendant to the rulings of the court below, (Perry, J.,) all of which are sufficiently stated in the opinion of this court. The verdict and judgment were in favor of the plaintiffs for $414.50 damages, and costs, and the defendant appealed.

The cause was argued before Le Grand, C. J., Tuck, Bartol and Goldsborough, J.

*Geo. A. Pearre*, for the appellant:

1st. The second plea to the special counts in the *narr.* was a good defence to the action. The entry of *nolle prosequi* on the appeal in the circuit court, amounts to nothing more than a reversal of the judgment, and is a bar to another suit for the same cause. 8 *B. Munroe*, 225, *Harris vs. Tiffany & Co.* 2 *Wood. & Minot*, 531, *Folger vs. The Robert G. Shaw.* The case was tried before the magistrate on the merits, judgment given against the company, from which *it* appealed, upon which appeal it had a right to have a re-hearing of the case. The appeal did not vacate the judgment. The judgment stands until reversed. Upon the appeal of the company, it was the duty of the court "to hear the allegations and proofs of both parties, and determine upon the same according to the law of the land, and the equity and right of the matter. And inasmuch as the appellee could not rightfully abandon his case, and acquire a right to bring another action, this court will give to the proceedings of the circuit court, upon the appeal from the magistrate, the legal effect which the facts stated in the plea ordain for it. It is not necessary, in a plea of former judgment, to say it is unreversed.

Borden Mining Co. *vs.* Barry.

1 *Saund. Rep.*, 330, *note* 4. A *prima facie* answer to the *narr.* is stated in the plea, and that is sufficient. 1 *Chitty's Pl.*, 222. It is not even necessary to plead a former recovery, but it may be admitted in evidence. 4 *G. & J.*, 360, *Shafer vs. Stonebraker*. 12 *Md. Rep.*, 566, *Beall vs. Pearre*. In the case of *Richardson vs. Parsons*, 1 *H. & J.*, 253, the judgment was reversed, and the verdict set aside, for error in fact, and it was not evidence because reversed on that ground: the same would have been the result if reversed on any ground. In *Wood vs. Jackson*, 8 *Wend.*, 36, the verdict urged as an estoppel had been set aside upon the reversal of the judgment in the court of errors. But here there was no need to state the judgment was not reversed, because the court which gave the judgment relied on, was itself an appellate court. The argument on the other side, and the demurrer, suppose I am relying on the judgment of the justice, whereas I am relying on the judgment of reversal: I plead the facts, and rely on the legal effect of those facts. The plaintiff had no right to *non pros.* the case; he could not enter *non pros. alone*, as in cases where a party may *non pros.* 8 *Md. Rep.*, 50, *Frazier vs. Griffie*. Reversal must be entered. The case was not gone into and the judgment reversed because of some technicality, or reversed upon something not involving the merits. The plea shows specially how it was done, and negatives all idea that the judgment was reversed upon matter of form merely. Suppose a party has judgment against him in the circuit court, and appeals, can the appellee come up here and enter judgment reversed? The circuit court is an appellate court in such cases, both as to law and facts; this court is such as to law. The *case* is not commenced afresh in the circuit court; the *trial* is gone over. The *appeal* does not destroy the judgment, unless it stands reversed; if no bond is given on appeal, the judgment may be collected. *Non pros.* is a proceeding which terminates an action before and without trial. *Ev. Pr.*, 262. The case of *Brintnall vs. Foster*, 7 *Wend.*, 103, only decides that the justice *could* render the judgment of *non suit*, and that parol evidence was not admissible to contradict the record. But I

say in this case the court could not permit a *non pros.* A voluntary reversal it could permit; the judgment of reversal is entered; that bars; all else is a nullity, except to show the appellee's consent. We do not inquire into the propriety of the judgment, but its *legal effect.* The plea states how the judgment of reversal, without prejudice was entered, and this *negatives* the idea that it was for want of form. It was entered upon the *non pros.* at the request of the plaintiff. The terms "reversed without prejudice," amount, therefore, to nothing more than a simple reversal. The plea is so special that it shows, affirmatively, the proceedings were regular.

2nd. The evidence in the first exception was admissible in mitigation or reduction of damages. The greater quantity of coal freighted, the greater the receipts of the plaintiff, and the less, comparatively, his loss by delays. It is evidence, admissible, as accounting for want of promptness in loading and unloading the coal, and tending to prove the good faith of the defendant in reducing the quantity sent by it in the after part of the season.

3rd. The evidence in the second exception was also admissible. Rakes had sworn to a certain conversation between himself and Lynn, the agent of the company. Lynn had denied it. Rakes had denied that he had ever said to Morgan that he, Morgan, was certainly present at the conversation between Lynn and Rakes, testified to by Rakes. Morgan had testified that Rakes had twice said to him he was present at such conversation. Lynn had said he had used such language on the wharf and in the office, relative to Henderson's boats. The rejected evidence was offered to show that Rakes had mistaken what Lynn said as to Henderson's boats, and confounded it with the Borden boats. The evidence was offered to show the probability of a mistake in the evidence of Rakes.

4th. The tenth prayer should have been granted, because if the defendant violated the contract, in not loading the plaintiff's boat, as he had contracted, he is bound to use reasonable exertions to render his loss as light as possible. 13 *Md. Rep.,* 54, *Benson, et al., vs. Atwood. Abbott on Ship-*

*ping*, 597.    And it would be reasonable and proper to get rid of the expense of keeping hands to run the boat, and keep the horses, in a manner least expensive, consistent with their well being.    The plaintiff has no right to say that he will keep the boat fully equipped with men, and keep up the horses, as if the boat were running, and charge the expenses to the defendant, crediting it with such freight as he may be able to get.    The authorities cited by the other side, on this point, do not seem to cover it.    2 *Parsons on Cont.*, 469, states the case of a freighter who freights a ship *in part*, and that the owner must take other freight, if he can get it.    2 *Greenlf's Ev.*, *sec.* 261, is on the general principle of the plaintiff's obligation.    What is proper use of reasonable exertion to lessen expenses, is a question of law and not of fact. 7 *Md. Rep.*. 335, *Hess vs. Newcomer*.    In *Riggin vs. Patapsco Ins. Co.*, 7 *H. & J.*, 279, 291, it was decided that what constitutes reasonable apprehension of danger to justify a deviation, is matter of law.

5th.    The rejection of the eleventh prayer was erroneous. The plaintiff's proposition may be true, that a party plaintiff is not *bound* to state more of the defendant's undertaking or promise than he alleges has been violated, and for which he goes.    But if he does state any other part of the defendant's promise, he must state it correctly.    1 *Smith's Lead. Cases*, 753, 754, 755.    2 *East.*, 2, *Penny vs. Porter*.    In this case the breach is, that the defendant *wholly neglected* to load and unload the boat; in the *third* count that defendant wholly dismissed the plaintiff from its service, and refused to further employ him; in the *first*, that defendant neglected and refused to load and unload the boat, and to receive and unload the coal, and refused to perform its undertaking and promise; and in the *fourth*, that the defendant refused to employ the plaintiff in carrying coal, and before the closing of navigation.    Now if the payment of freight by the defendant had been omitted in the *narr.*, as these counts are not counts by the party whose work a defendant had undertaken to do, for misfeasance in doing it, as in *Coggs vs. Barnard*, but for refusal to let, the plaintiff do further work for it, the counts would

have been demurrable, inasmuch as without a consideration of freight agreed to be paid by defendant to plaintiff, the plaintiff's undertaking would have been *nudum pactum*, and not binding on him, and, of course, not binding on the defendant. A party who sues for a violation of a contract, the whole of which, by the defendant's act, he is prevented from performing, must state a contract which bound him to its performance. To do this, he must state a consideration moving from the defendant. This is a case of mutual promises. The plaintiff's promise is only binding on him because of defendant's promise to pay freight; and the defendant's promise is only binding because the plaintiff's promise is binding on him. 1 *Chitty's Pl.*, 297. The consideration of the plaintiff's promise was not *irrelevant* to the breach complained of, because without that statement of consideration of the plaintiff's promise, (viz., payment of freight,) the plaintiff's promise was *nudum pactum*, and, as a consequence, the defendant's also. The court, in 6 *H. & J.*, 81, *Speake vs. Sheppard*, state as one of the fatal variances, the variance between the *narr.* and proof as to the consideration of the *plaintiff's* promise, the erection of but one gate. In *Walsh vs. Gilmor*, 3 *H. & J.*, 408, the second count stated the contract, that defendant had agreed to purchase whatever brandy the plaintiff had in the store, and give his note, with surety, &c., avers delivery, and breach, refusal to give notes. The price of the brandy is not sued for *as such*. In that case it could as well have been alleged that the plaintiff was not suing for the price of the brandy delivered, but for damages for not giving the notes, and that the plaintiff need not state correctly that part of the contract, but that it was only necessary to state correctly that part of the contract which had reference to giving the notes. In *Watkins vs. Hodges*, 6 *H. & J.*, 44, the *narr.* in the breach was both for non-payment by defendant for the twenty-one hogsheads delivered, and for non-refusal to receive the balance. In 6 *H. & J.*, 84, a fatal variance was held to be, in statement of consideration *of the plaintiff's* promise, that defendant was to erect one gate, when by contract he was to erect two.

*Thos. Devecmon* and *J. H. Gordon,* for the appellee:

1st. The demurrer to the defendant's plea was properly sustained, because, 1st, the judgment, as pleaded, is no estoppel, for the plea expressly states, not only that it was reversed, but that it was reversed without prejudice; 2nd, in the appellate court the case comes up *de novo* for trial; it may be tried on new evidence and new pleadings. The plaintiff had the right to discontinue or *non pros.* his case. .The entry of *non pros.* under the Maryland practice, gives the right to bring a new suit; 3rd, besides all this the entry of judgment reversed without prejudice, is conclusive upon the question. The propriety of this entry, *without prejudice,* cannot now be inquired into. For these positions we refer to 2 *Ev. Harr.,* 44. *Ev. Pr.,* 264. 3 *Chitty's Pl.,* 929, 956. 4 *H. & McH.,* 296, 322, *Mahoney vs. Ashton.* 1 *H. & J.,* 253, *Richardson vs. Parsons.* 8 *Wend.,* 36, *Wood vs. Jackson.* 7 *Wend.,* 103, *Brintnall vs. Foster.* 2 *Smith's Lead. Cases,* 554. 4 *Phillip's Ev.,* 127. 10 *Johns.,* 364, *Youle vs. Brotherton.* 4 *Wend.,* 95, *Close vs. Stuart.*

2nd. The evidence offered in the first exception, and rejected, was wholly irrelevant. It could reflect no light upon the contract. It could not reduce the damages; on the contrary, it would only show that the plaintiff could have earned more than in *ordinary* seasons, and, therefore, his damages would be greater.

3rd. In the second exception the plaintiff had proved by Rakes that Lynn, as agent of the defendant, had told him that he would not turn out the outside boats, (which term included the plaintiff's boat,) in the Borden line, and if Green, (also agent of the defendant,) wanted them turned out he must do it himself. Rakes also stated that Morgan was present at this conversation. Lynn denied that he ever made this declaration to Rakes. The defendant then, in order to impeach Rakes, recalled him and asked if he had ever said to Morgan that he, Morgan, was present at the above conversation? Rakes denied that he had so said to Morgan. Morgan then proved that Rakes did so tell him. This was all proper, but the defendant then further offered

to prove by Morgan "that on several occasions during the summer of 1859, he heard Lynn say, on the wharf and in the office, that if Mr. Henderson wanted any boats turned out, he should turn them out himself, and that such declarations of Lynn had no reference to Borden Company boats, running in Borden Company line." These latter declarations were rejected, and properly: for it was not pretended that either the plaintiff or his witness Rakes was present, and it was surely *res inter alios*, and inadmissible upon every principle.

4th. The tenth prayer was properly rejected, because it asks the court to say as *matter of law*, that a certain course of conduct on the part of the plaintiff, would have been a reasonable exertion to render his damages as light as possible. The plaintiff had already conceded in the ninth prayer all that the defendant could ask. The proposition in the tenth prayer was, therefore, one of fact, to be found by the jury under the ninth prayer, and not one of law to be determined by the court. The plaintiff was bound as conceded in the ninth prayer, to render the loss as light as possible. For this purpose he was bound to take other freight if offered, and he did so. 2 *Greenlf's. Ev.*, sec., 261. 2 *Parsons on Cont.*, 469. *Sedgwick on Damages*, 379, 473. 24 *Wend.*, 304, *Heckscher vs. McCrea.*

5th. The eleventh prayer was also properly rejected, because, 1st. The plaintiff was not suing for *non-payment* of freight (which had all been paid) but the *gravamen* of all the counts was, that the defendant refused *to load the boat,* and improperly discharged it *before* the boating season was over, it having been as alleged, employed for the *entire season.* The plaintiff was, therefore, only bound to state correctly *that portion* of the contract for the *breach of which he sued,* and he was not bound to state with precision separate and *other portions* of the contract as to which he *alleged no breach.* 1 *Chitty's Pl.*, 314, 317. 11 *Price*, 19, *Ward vs. Smith.* 8 *East.*, 7, *Miles vs. Sheward.* 13 *East.*, 18, *Tempest vs. Rawling.* 4 *Taunt.*, 285, *Cotterill vs. Cuff.* 2 *Barn. & Ald.*, 337, *Wickes vs. Gordon.* 2nd. Whilst it is undoubt-

edly necessary to state correctly the *consideration* for the *defendant's* promise, (and this is truly stated here,) yet it is not necessary to state, with precision, the consideration of the *plaintiff's* promise. It was wholly irrelevant to the breach of the defendant's promise complained of 1 *Chitty's Pl.*, 299, 317. 3rd. The rule requiring a contract in the *alternative* to be stated as such, does not apply unless the *breach* alleged is of that particular *portion of the contract.* 1 *Chitty's Pl.*, 208, 314, 317. Nor does this conflict with the cases cited by the counsel for the appellant in 3 *H. & J.*, 408; 6 *H. & J.*, 44 and 84, and 2 *East.*, 2, in each and all of which the variance constituted the very *gravamen* of the action. If the plaintiff had been suing here as to *freight*, the variance might have been material and fatal, but in the language of the authorities this is not the *"gravamen of his action."*

BARTOL, J., delivered the opinion of this court.

The first question presented by the record in this case, arises upon the demurrer of the appellee, (the plaintiff below,) to the defendant's fourth plea, being the second plea to the first, second, third and fourth counts of the *narr.* The plea alleges that the appellee brought suit for the violation of the identical promises, set out in these counts, before a justice of the peace, on the 12th of September 1859, which suit was tried before the justice on its merits on the 27th of September 1859, and judgment rendered in favour of the plaintiff for $95.00 and $1.08½ costs. That the defendant, the present appellant, appealed to the next term of the circuit court for Allegany county, on the second Monday of October 1859; that both parties appeared in the circuit court, and that the court, against the remonstrance of the appellant, in that case ordered a *non pros.* to be entered, and the court entered the *judgment reversed without prejudice.*

We concur with the court below in the opinion that this is a bad plea; the facts set out do not constitute any estoppel against the plaintiff in this action.

Under our law regulating appeals from judgments of justices

Borden Mining Co. *vs.* Barry.

of the peace, the cause is taken up *de novo* in the appellate court, and disposed of in the same manner as if no judgment had been rendered; and it is competent for a plaintiff in such a case to abandon his suit or to suffer *non pros.* as in an original action, leaving himself at liberty to institute a new suit, for the same claim. The appellate court had full authority to reverse the judgment without prejudice; which placed the plaintiff in *statu quo;* and having done so in this case, the matters alleged in the plea constitute no bar to this suit, and the demurrer was properly sustained. The authorities cited by the appellee in argument on this point we think fully support this view.

The first exception presents a question of evidence. The contract declared on was an engagement by the appellant, to employ the boat of the appellee in carrying coal on the Chesapeak and Ohio Canal, during the whole boating season of 1859. After offering evidence tending to disprove the contract, the appellee offered to prove, "that by reason of the allowance by the canal company of greater depth or draft of water in the canal, during the season of 1859, the boats engaged, in the line of defendant in carrying coal, could carry, and did carry an average of from nine to ten tons in each load, during the season of 1859, over what the same boats had been able to carry in previous seasons."

This evidence was rejected by the circuit court, and to that action of the court, the appellant took its first bill of exceptions. In our opinion the evidence was properly rejected as irrelevant to the question at issue. The fact that, by reason of alterations or improvements made by the canal company, boats employed on the canal were enabled to carry larger cargoes in 1859 than in previous seasons, could not diminish the damages claimed by the appellee, nor inure in any way to the benefit of the appellant. On the contrary, if it could have any effect, it would be to increase the damages of the appellee arising from the breach of the contract by the appellant; for it would result, from the facts offered in proof, that the appellee might have earned larger freights under the contract, and thus his damages be increased by its breach. On this exception we affirm the ruling of the circuit court.

We concur also in the propriety of rejecting the testimony offered by the appellant as to the declarations made by Lynn to the witness Morgan, embodied in the appellants second bill of exceptions. It does not appear that they were made in the presence either of the appellee or of the witness Rakes; they could not affect the rights of the appellee, nor tend to contradict or disprove the testimony of Rakes, and were therefore clearly irrelevant and inadmissible.

The third bill of exceptions brings before us for review, the action of the circuit court upon the the prayers offered by the defendant below; they are sixteen in number, of which all were either conceded by the plaintiff, or granted by the court, except the *tenth, eleventh* and *sixteenth*. In the argument before this court, the *sixteenth* prayer was properly abandoned by the appellant's counsel, leaving for our consideration only the *tenth* and *eleventh* prayers. By the tenth prayer the court was asked to instruct the jury, that after the failure of the defendant to furnish freight and employment to the plaintiff's boat, "it became the duty of the plaintiff to use all reasonable and proper exertions *to render his* loss as light as possible; and that it would be a proper use of such reasonable exertion to get rid of the expenses of keeping hands to run said boat, and to keep the horses in a manner least expensive, consistent with their well-being." This prayer was properly refused. The duty of the plaintiff, after the breach of the contract by the defendant, was to "use all reasonable and proper exertions, in the use and disposition of his boat, stock and hands, to save himself from loss or render the same as light as possible," and so the jury was instructed in the ninth prayer conceded by the plaintiff; but it is an error to suppose, that it was, in law, the duty of the plaintiff to keep his boat and horses unemployed and to dismiss his hands, and it would have been error so to instruct the jury. See *Benson & Trundy vs. Atwood*, 13 *Md. Rep.*, 21.

The only remaining question on this appeal, arises upon the *eleventh* prayer, which was rejected by the circuit court. This prayer relies upon a variance between the contract alleged, and the contract proved, as fatal to the plaintiff's action.

The contract declared upon is, that "in consideration that the plaintiff would run his canal boat in defendant's line of boats in freighting coal for it, it, the defendant, *promised to employ the boat during the entire season*, and would pay the plaintiff freight at the rate of $1.15 per ton;" the breach alleged is, "*that the defendant wholly neglected to load and unload the boat.*" The proof tended to show that the rate of freight to be paid was $1.15 per ton, *or current rates*, which meant such rates as might be usually paid by the companies freighting coal, liable from time to time, to fluctuation and change. The appellant's eleventh prayer asked the court to say to the jury, that if they believed the rate of freight to be paid per ton, was, by the contract, $1.15, *or current rates*, then the plaintiff could not recover, because the *narr.* stated the rate to be $1.15, absolutely.

The appellant contends, in support of this prayer, that the contract being entire must be set out as made. In considering this point we may, with propriety, quote the language of Chief Justice Marshall in *Sheehy vs. Mandeville*, 7 *Cranch.*, 217: "Courts being established for the purpose of administering real justice to individuals, will feel much reluctance at the necessity of deciding a cause on a slip in pleading, or on the inadvertance of counsel. They can permit a cause to go off on such points, only when some rule of law, the observance of which is deemed essential to the general administration of justice, peremptorily requires it." In this case there is no such rule of law to control our decision in favor of the appellant. Upon a careful examination of the authorities cited, we find no case going so far as to declare the variance now insisted on to be material. It was not necessary for the maintenance of the action to set out in the *narr.* the rate or amount of freight agreed to be paid; the suit was not brought to recover freight earned; but the breach alleged was, the failure of the defendant to load and unload the boat of the plaintiff. That part of the contract which constituted the ground or gravamen of the action is properly stated, and also the consideration for the defendant's promise, which would seem to be all that the rules of pleading require. 1 *Chitty's*

*Pl.*, 299, 308, 314, 317. Even if it were conceded, as contended for by the appellant, that although it was not necessary to set out in the declaration the rate or price of freight to be paid, yet having undertaken to do so it was necessary to allege it as proved, and a material variance would be fatal, still, we should hold that, there is no substantial variance in the case presented. The proof shows that the current rates were, in fact, $1.15 per ton, and "the rule of pleading is, that a contract must be stated according to its legal operation, and if the evidence proves it according to that legal operation, it is sufficient;" per Bayley, J., in *Wickes vs. Gordon*, 2 *Barn. & Ald.*, 338. Being of the opinion that the alleged variance was immaterial we think the eleventh prayer was properly refused.

*Judgment affirmed.*

(Decided Oct. 29th, 1861.)

In the case of THE BORDEN MINING COMPANY *vs.* HAMILTON DOWNS, the cause of action and pleadings were similar to those in the above case, and the question presented on the pleadings and prayers were the same, and the cause was argued by the same counsel.

BARTOL, J., delivered the opinion of this court.

This appeal presents the same questions as were decided in the case of *The Borden Mining Company vs. John Barry*, *(ante*, 419,) and for the reasons assigned in the opinion filed in that case, the judgment below will be affirmed.

*Judgment affirmed.*

(Decided Oct. 29th, 1861.)