LOUIS A. BOEHM *v.* ANNE ARUNDEL
COUNTY, MARYLAND ET AL.

[No. 916, September Term, 1982.]

*Decided May 4, 1983.*

The cause was argued before MOYLAN, BISHOP and ALPERT, JJ.

*Stephen J. Kleeman,* with whom were *Irwin M. Sussman* and *Leonard Z. Bulman* on the brief, for appellant.

*Kathryn J. Dahl* for appellee Anne Arundel County, Maryland. *Edwin A. Lechowicz* for other appellees.

ALPERT, J., delivered the opinion of the Court.

On April 11, 1979 the Anne Arundel County Office of Planning and Zoning ("the Zoning Office") issued an Administrative Decision in response to an application by Louis A. Boehm, the appellant, for recognition of a nonconforming landfill on approximately 198 acres of his property. The decision granted nonconforming use for approximately 18.8 of the acres and provided for certain other conditions and restrictions of usage. Signatories to this decision were Florence Beck Kurdle, Planning and Zoning Officer, and Owen K. White, Zoning Administrator.

Apparently no one affected by the decision was satisfied. Boehm appealed to the Anne Arundel County Board of Appeals ("the Board") as did neighboring landowners ("the protestants"). The hearing before the Board involved over forty hours of testimony from thirty-eight witnesses over a period of six hearing dates. Boehm presented evidence to support his contention that a nonconforming landfill had existed on his property prior to July 1, 1952 as required in order to establish nonconforming use status under §13-310 and §13-311 of the Anne Arundel County Code (1972). The protestants produced witnesses whose testimony essentially attempted to refute that of the applicant. They generally

testified that there were no dumping and landfilling activities on the Boehm property prior to July, 1952 and that the landfilling activities had only begun in the late 1960's and early 1970's. According to county witnesses, the county became aware of the landfilling and dumping on the Boehm property in 1976. At this time the county had sent violation notices to Boehm requesting he apply for a nonconforming use or bring his property into compliance with the law.

In response, Boehm submitted a plat, map and several affidavits to show the limits of his operation. This plat had been the basis for the April, 1979 Zoning Office decision that limited the Boehm property to 18 acres of nonconforming use as landfill. Owen White of the Office of Planning and Zoning in his testimony before the Board indicated, however, that his initial decision was based upon vague and incomplete information. He stated that after hearing the additional testimony before the Board, he believed Boehm had not met his burden of proof on the question of prior use and implied that his initial decision appeared incorrect.

The Board issued a written Opinion and Order on October 23, 1980. The findings concluded "[t]he Board was not convinced that a landfill or excavation operation existed on the property prior to July, 1952. On the contrary, the Board is convinced by the evidence that there was no excavation and little more than sporadic dumping on a few occasions prior to July, 1952." The Board's Order declared the Office of Planning and Zoning decision null and void and determined that the lawful non-conforming status of the subject property was to be denied.[1]

---

1. The full text of the operative portion of the Board's findings is as follows:

> Testimony by numerous witnesses was presented on behalf of both petitioners and protestants. In most instances this testimony was in direct conflict as to whether or not a landfill and excavation operation existed on this property prior to July 1, 1952, and has been an ongoing operation, without a consecutive twelve-month interruption, since.
>
> The County witnesses all indicated there is no proof of this operation having been in existence prior to July 1, 1952, nor of its having continued without interruption since. Owen White, Office

Boehm appealed this decision to the Circuit Court for Anne Arundel County. Judge Raymond G. Thieme, Jr. found "ample evidence to support the Board's findings" and affirmed the decision of the Board of Appeals. An appeal was noted and the following three questions are placed before us:

1. Did the court commit error in refusing to allow the discovery and introduction of evidence to demonstrate that the decision of the Board of Appeals was based upon a tainted record?

2. Did the conduct of the proceedings before the Board of Appeals require that this court reverse the trial court and remand to the Board of Appeals for further proceedings? and

3. Does a review of the evidence reveal that the action of the Board of Appeals in denying appellant's non-conforming use was arbitrary and capricious and the decision of the Board is not fairly debatable?

Perceiving no error, we shall affirm.

I. *The Tainted Record*

A. *Consideration of Other Administrative Decisions Affecting Similar Issues*

The Circuit Court refused to permit evidence of an administrative decision issued on May 7, 1979 by the Zoning Office which involved Browning Ferris Industries ("BFI"), appel-

---

of Planning and Zoning, stated he presently believes his administrative decision in this case, based on the information his office had at the time, was not correct.

Although several witnesses testified there was dumping here prior to 1952, and that it continued without a consecutive twelve-month interruption until the present, many witnesses for the protestants testified there was no dumping or excavation prior to July 1, 1952. Testimony of other witnesses indicated there was no evidence of a landfill operation here until 1969 at the earliest.

Based on all the evidence and exhibits, the Board was not convinced that a landfill or excavation operation existed on this property prior to July 1, 1952. On the contrary, the Board is convinced by the evidence that there was no excavation and little more than sporadic dumping on a few occasions prior to July 1, 1952.

lant's chief landfill competitor. This decision was more favorable than that granted to appellant, who claimed that as a result of the failure to permit inquiry into this other decision, he had been deprived of a fundamentally fair hearing before the Board. Also excluded by the Circuit Court was evidence of the thought processes of White whose testimony before the Board apparently was in conflict with the granting of the nonconforming use. We observe initially that the BFI decision was public information at the time of the Board hearing, but appellant did not raise the issue at that time. Further, it is clear that this evidence was properly excluded.

In *Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 289 A.2d 303 (1972), the appellants had requested a rezoning by the District Council which was denied. Shortly thereafter, the Council granted a rezoning to a similar property in close proximity to the appellants. In considering what additional evidence the Circuit Court may admit following an appeal from an administrative hearing, the Court of Appeals stated:

> This Court has many times held that upon appeal the Circuit Court in its review of the evidence is *bound by the record made before the governmental body* from which the appeal is taken. Suburban Properties, Inc. v. Rockville, 241 Md. 1, 6, 215 A.2d 200 (1965); Board of Commissioners v. Meltzer, 239 Md. 144, 156, 210 A.2d 505 (1965) and Bishop v. Board of Commissioners, 230 Md. 494, 501, 187 A.2d 851 (1963). However, these decisions are directed to *matters which would enhance or diminish the evidence supporting or challenging the application,* such as evidentiary matters bearing on mistake or change or need and were not, in our opinion, intended as authority to exclude *matters of public record which directly relate to the* arbitrary, capricious or *discriminatory quality of the conduct of the zoning authority which affects the property of the applicant.* In the instant case Aspen, in

proffering the Faller decisions for the consideration of the lower court, was not asking it to accept or consider additional evidence to supplement the merits of its case, which it had the burden of proving, but was asking that the *validity of the District Council's actions appealed from be considered in light of other actions by that body based on the same evidence and within the same planning area,* as indicative of arbitrary and discriminatory action. Without intending to qualify or minimize the legal effect of the cases cited above, we think that it would have been proper for the lower court to have considered the Faller decisions for the limited *purpose of determining whether the District Council acted in the instant case, arbitrarily or with discrimination.* The action of the District Council in denying the C-1 classification to Aspen, when viewed in context with its granting of commercial zoning to the Fuller tract on basically the same evidence, becomes patently arbitrary and discriminatory. (emphasis added).

*Id.* at 316-17, 289 A.2d at 310.

Appellants argue that this language would allow the Circuit Court to review any evidence that would demonstrate the potential motives, bias or prejudice of any party including White's or the administrative agency's handling of a similar case (BFI) and the entire handling of this case by County officials who publicly opposed appellant's operation. In the instant case this would be permitting the deposition of White as to the possible bias, prejudice and discrimination with respect to Boehm's application. Further, appellant contends that inquiry into the BFI landfill grant would be relevant because it constitutes actions by that body based on the same evidence and within the same planning area. We view appellant's attempt to expand *Aspen Hill* as both undesirable and unwise. As the decision in BFI did not involve a comparable action by the same body, *Aspen Hill* would not be applicable. Under the facts of *Aspen Hill,* the

Circuit Court was permitted to review comparable decisions by the same body to determine discrimination. In the instant case, appellant seeks Circuit Court review of comparable decisions that are made by different bodies, but involving the same subject. The fact that the properties were in close proximity to each other in *Aspen Hill* was a major factor in the Court's determination that the zoning decision was arbitrary. Here, there is no evidence as to the close proximity of BFI to appellant's property. Appellant and BFI are but competitors, not owners of adjacent tracts of land. A stronger case may be made for arbitrary decision making where the properties are in close proximity to one another than when its owners are simply competitors. Thus, *Aspen Hill* does not support appellant's arguments that a Circuit Court may accept additional evidence of alleged discrimination where the comparable decisions sought to be introduced were issued by different administrative zoning bodies.

As for the appellant's attempt to explore the thought processes of White, the law is clear that it is improper to probe the mental processes of an administrator in reaching his conclusion. Those legally responsible for a decision must in fact make it, but their method of doing so is largely beyond judicial scrutiny. *United States v. Morgan,* 313 U.S. 409 (1941). *See,* B. Schwartz, *Administrative Law* §133 (1976).

### B. *Testimony of an Administrative Agent on Appeal of a Decision of That Agency*

As for the testimony of White before the Board, which appellant claims amounted to a reversal of the earlier administrative decision, the Circuit Court properly handled the issue. When additional facts were brought to White's attention, he changed his conclusions as to the sufficiency of those facts to the establishment of a nonconforming use. The following excerpt from his testimony makes clear that point:

> Q But he did not. Mr. White, you reached the administrative decision based on the evidence that was supplied you as of that date, April 11, 1979, is that correct?

504

A  That's correct.

Q  And since that time, other information has come to you — predominantly, the testimony that you have heard at these hearings, is that also correct?

A  No, Mr. Lechowicz, it didn't exactly come to me; I just happened to be here to hear it.

Q  Again, that is part of your responsibility?

A  Yes.

Q  And do you now believe, after having heard that testimony, that your decision is in error?

\* \* \*

THE WITNESS:

Let me see if I can wiggle my way through this one. The issues in all of these 16 to 18 hours — and all of you have sat there and heard testimony — very simply, whether a nonconforming use existed at the time of the adoption of the comprehensive zoning, first off, July 1st, 1972; secondly, going beyond that to July 1st, 1952, okay, rather that, if it was a lawful, nonconforming use, existed and operated continuously, without interruption, either under the '72 code, which said for any reason — or the abandonment clause, that I read the definition to you under the '52 code — since the date of nonconformity; and, lastly, the extent of the nonconforming, if, in fact, you recognize it.

Now, you have heard the testimony, as I have, and saw the affidavits of the witnesses, and I don't know what to tell you with respect to that first part as to whether something existed on the property as of July 1st, 1952.

What is suspect to me, though, is

whether that operation has been continuously operated over the years and up until the present time. Lastly, would be the extent of the nonconformity, which was recognized in the opinion, and we say it is 18.8 acres.

They are the issues; they are my observations as to the testimony presented to you.

BY MR. LECHOWICZ:

Q Was your answer yes or no?

A Well, I don't want to suppose (sic) on the Board's judgment.

CHAIRMAN DONOVAN:

You may want to repeat the question.

BY MR. LECHOWICZ:

Q The question was whether or not you believe, after having heard the additional evidence and testimony, that your decision of April 1979 is correct? But if you don't want to answer it, I will not press you.

A You left it open as to correct in what regard?

Q Do you believe that a lawful, nonconforming use for 18 acres, or whatever it say (sic), has been proved to have been in effect — in existence in 1952 and has continued to this date? Do you believe that burden has been met?

A Overall, I would have to say no.

The admission of this testimony before the Board was proper under the circumstances. Although it was claimed that White's testimony was tantamount to a change in decision of the Zoning Office, we disagree. White wears various hats in his capacity as Zoning Administrator. Among his responsibilities, he is part-investigator and part-advisor to Kurdle. While he does have certain expertise in this area of administrative law, the effect of his testimony before the Board was not to change the prior decision. Rather, he

changed his conclusion based on a modification of the facts as he then saw them from a different perspective. The situation is analogous to an accident investigator who prepares a report, but upon learning of new facts at a trial or hearing, changes his conclusion as to the effect of the facts. White's testimony before the Board, therefore, was not a *per se* reversal of the Zoning Office decision and did not taint the Board's decision. He was not changing the Zoning Office's formal decision or rendering a new official opinion. His observation of the facts changed when he learned of additional different facts. However, even if White's testimony before the Board was inadmissible, there was an abundance of other credible evidence upon which the Board could, and undoubtedly did, base its decision. Thus, any error would have been harmless. *See, Rotwein v. Bogart,* 227 Md. 434, 437, 177 A.2d 258 (1962).

### C. *Administrative Appeal De Novo*

Appellant contends that the review by the Board was improper in light of its failure to give great deference to the Zoning Office decision. An administrative decision is not controlling upon the reviewing board. *Richmond Corp. v. Board of County Commissioners,* 254 Md. 244, 255 A.2d 398, 408 (1969) involved an appeal from a denial of a special exception by the Prince George's County District Council. The Court of Appeals stated at 254 Md. at 264, 255 A.2d at 408:

> Even if the Planning Commission and the Department of Inspection and Permits *had* rendered an opinion that the uses, or any of them, were in harmony with the purpose and intent of the General Plan, the District Council would not have been bound by such opinions. *Cf.* Mayor and City Council of Baltimore v. Muller, 242 Md. 269, 279, 219 A.2d 91, 97 (1966).

Similarly in *City of Baltimore v. Muller,* 242 Md. 269, 279, 219 A.2d 91, 97 (1966), the Court of Appeals discussed the effect that favorable reports of other agencies have upon the

Baltimore Board of Municipal and Zoning Appeals. The Court stated, at 242 Md. at 279, 219 A.2d at 97:

> We have also held that the favorable reports of the Fire Commissioners, the Commissioner of Health and the Department of Transit and Traffic are not controlling. Shell Oil Co. v. City of Baltimore, 225 Md. 463, 472, 171 A.2d 234, 238 (1961).

Appellant contends, however, that the hearing before the Board is less than purely *de novo,* and that great deference must be given to the Zoning Office decision. We disagree. The hearing before the Board is completely *de novo.* The Board is in no manner bound by the decision of the Zoning Office.

Section 602 (a) and 602 (d) of the Anne Arundel County Charter provide for a *de novo* review by the Board of Appeals of the Zoning Office decision. At the time of this appeal,[2] that section provided:

> (a) *Appeals from orders relating to zoning.* The County Board of Appeals shall have and exercise all the functions and powers of the Board of Appeals of

---

2. The statute has been amended by Bill No. 93-80, §6. The practical effect of the change in the statute was to eliminate the redundancy which existed in the prior §602 and §603 with regard to *de novo* appeals before the Board of Appeals. We decide this appeal, however, based upon the statute in effect at the time of the Board hearing. The statute presently provides:

(a) *Appeals from orders relating to zoning.* The County Board of Appeals shall have and exercise all the functions and powers of the Board of Appeals of Anne Arundel County and of the County Board of Appeals described in Article 25A of the Annotated Code of Maryland as supplemented by other public general laws. All references in law to the Board of Appeals or the Board of Zoning Appeals shall be construed to refer to the County Board of Appeals created by this Article where such construction is reasonable In all cases heard by the County Board of Appeals, its decision shall be final unless further appeal be taken therefrom in the manner provided in Section 604 of this Article.

\* \* \*

(d) *Appeals from executive, administrative and adjudicatory orders.* The County Board of Appeals shall hear and decide appeals from all other administrative and adjudicatory orders other than those affecting the internal operation of the executive branch as may from time to time be provided by Article 25A of the Annotated Code of Maryland (1957 Edition) as amended or by ordinance of the County Council not inconsistent therewith.

Under either version of the statute, our result would be the same.

Anne Arundel County and of the County Board of Appeals described in Article 25A of the Annotated Code of Maryland as supplemented by other public general laws. All references in law to the Board of Appeals or the Board of Zoning Appeals shall be construed to refer to the County Board of Appeals created by this Article where such construction is reasonable. At the time the members of the first County Council qualify for office, the Board of Appeals and the Board of Zoning Appeals shall cease to exist. Petitions for all variances, special exceptions or reclassification of a particular piece of property, cases pending before the Board of Appeals or the County Commissioners at such time and all cases subsequently arising which otherwise would have been subject to their jurisdiction *shall be heard in the first instance by the Zoning Hearing Officer and on appeal, de novo, by the County Board of Appeals.* In all cases heard by the County Board of Appeals, its decision shall be final unless further appeal be taken therefrom in the manner provided in Section 604 of this Article.

\* \* \*

(d) *Appeals from executive, administrative and adjudicatory orders.* The County Board of Appeals shall hear and decide appeals from all other administrative and adjudicatory orders other than those affecting the internal operation of the executive branch as may from time to time be provided by Article 25A of the Annotated Code of Maryland (1957 Edition) as amended or by ordinance of the County Council not inconsistent therewith. (emphasis supplied).

Further, Section 603 of the Anne Arundel County Charter provides:

The County Board of Appeals shall have authority to adopt and amend rules of practice and procedure governing its proceedings which shall have the force and effect of law when approved by ordinance. The rules may relate to filing fees, meetings and

hearings of the Board, the manner in which its Chairman shall be selected and the term which he shall serve as Chairman and other pertinent matters deemed appropriate and necessary for the Board. *All decisions by the County Board of Appeals shall be made after notice and hearing de novo upon the issues before said Board.* All hearings held by the Board shall be open to the public, and the Board shall cause to be maintained complete public records of its proceedings, with a suitable index. All parties to the proceedings or their attorneys of record shall receive a copy of the decision of the Board. (emphasis supplied).

Addressing the issue of what constitutes a *de novo* hearing before an administrative body, counsel concede and we concur that there is no authority in this State to answer this question.[3] An excellent exposition, however, of what a *"de novo"* hearing embraces can be found in 2 Am. Jur. 2d *Administrative Law* §698 (1962). That section provides:

*A trial or hearing "de novo" means trying the matter anew the same as if it had not been heard before and as if no decision had been previously rendered. Thus, it is said that where a statute provides that an appeal shall be heard de novo such a hearing is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held, especially where the hearing is in a court of general, original jurisdiction.* Where a statute provides for a trial de novo and does not provide that the findings of the administrative agency shall be conclusive or of any force, the whole matter is opened up for consideration on appeal as if the proceeding had been originally brought in the

---

3. However, *see,* Hardy v. State, 279 Md. 489, 369 A.2d 1043 (1977) (criminal appeal *de novo*); State v. Rutherford, 145 Md. 363, 125 A. 725 (1922) (right of appellant to jury trial in appeal from Board of Zoning Appeals to Baltimore City Court). *See also,* Montgomery Ward v. Herrmann, 190 Md. 405, 58 A.2d 677 (1948); Zitzer v. Jones, 48 Md. 115 (1878); Borden Mining Co. v. Barry, 17 Md. 419 (1861), each of which dealt with *de novo* appeals from a judgment of a justice of the peace.

reviewing court. Trial in court is not an appellate proceeding where the statute provides for a suit to set aside an award and for determination of the issues upon trial de novo. Even though designated an "appeal," a review in which the court is not confined to a mere re-examination of the case as heard before the administrative agency but hears the case de novo on the record before the agency and such further evidence as either party may see fit to produce is to be regarded as an original proceeding. Thus, on a trial or hearing de novo it has been held immaterial what errors or irregularities or invasion of constitutional rights took place in the initial proceedings.

A trial de novo or a de novo hearing of the matter under "review" may be new and different from the trial or hearing before the administrative agency in respect of one or more, or all, of the following: evidence heard or facts considered, especially where the administrative agency did not afford a hearing; issues raised; findings made; grounds for decision; and the view of the evidence heard or facts considered, the opinion as to the preponderance of the evidence, and the proper judgment to be reached or action to be taken in accordance with the evidence or facts as thus viewed. The last element would appear to be the essential element of a true trial or hearing de novo and may be embraced by general statements of a court that a trial de novo is involved.

Not all the foregoing elements of a trial or hearing de novo are necessarily made operative by the fact that new and additional evidence is admitted in court, at least in the view of some courts; and not all of the elements are made operative as to all types of situations by the fact that a statute expressly authorizes or requires a trial or hearing de novo. The scope of de novo review of the actions of administrative agencies, or the significance of a trial designated as a trial de novo in such case, may vary with the subject matter of the review or the function of the agency, and may be tested in the light

of the nature and scope of the remedy through which such trial is made available and the proper distribution of governmental powers among the various branches of government under the Constitution. Thus, there may be a trial de novo upon the record as some statutes expressly provide, and a trial de novo in which the court must consider the record before the agency, accord a presumption of correctness or proper deference to the agency findings and conclusion, and refrain, at least in matters other than judicial, from substituting its discretion or judgment for that of the administrative agency. (footnotes omitted) (emphasis supplied).

As such, unless otherwise limited by statute or court rule, a *de novo* hearing is an entirely new hearing at which time all aspects of the case should be heard anew as if no decision had been previously rendered. Thus, the Board of Appeals may consider the decision of the Zoning Office in any light it desires but is not bound by the earlier decision in its *de novo* review. The *de novo* hearing, which is in actuality the first formal hearing on the issue, purges any potential errors from the earlier decision of the Zoning Office.

## II. *Due Process*

Appellant argues that he was denied due process of law and a fair hearing before the Board. This argument is based upon the reversal in position of White in his testimony before the Board, the alleged prejudice caused by the disqualification of two of the five Board members, the political atmosphere surrounding the hearing, and the County Attorney's position as adversary to Boehm.

Whether constitutional or statutory requirements or elements of fair play and impartiality have been violated in this type of hearing should be decided on a case by case basis. *Hyson v. Montgomery County Council,* 242 Md. 55, 217 A.2d 578 (1966). In discussing due process within the context of administrative hearings, Professor Schwartz, in his treatise on Administrative Law, states:

The literal meaning of due process is *fair procedure.*

\* \* \*

Before an agency takes action which adversely affects particular rights and obligations, those affected must be given notice and an opportunity to present their side of the case in a full and fair hearing. But more is required of agencies than minimal compliance with the "hear the other side" principle. When due process requires a hearing, it requires many of the elements of a "trial-type" hearing. Building upon the due process foundation, the courts have constructed an imposing edifice of formal adjudicatory procedure. The consequence has been a virtual judicialization of the administrative process. Administrative procedure has acquired many of the attributes of courtroom procedure.

The rights required by due process before an administrative agency typically include the right to:

(1) notice, including an adequate formulation of the subjects and issues involved in the case;
(2) present evidence (both testimonial and documentary) and argument;
(3) rebut adverse evidence, through cross-examination and other appropriate means;
(4) appear with counsel;
(5) have the decision based only upon evidence introduced into the record of the hearing;
(6) have a complete record, which consists of a transcript of the testimony and arguments, together with the documentary evidence and all other papers filed in the proceeding. (emphasis in original; footnotes omitted).

B. Schwartz, *Administrative Law, supra* §67 at 192-93.

All of those rights were afforded the appellant herein.

We have already commented on the testimony of White before the Board of Appeals. Suffice to say that upon modifying his former conclusions, he was subject to vigorous cross-examination. He was cross-examined as any other witness might be; he was subject to being impeached on his factual statements in the same manner as in any case. The receipt of prejudicial evidence does not amount to unfairness. The disqualification of certain Board Members was admirable. This served to insure the appellant a fair hearing. Appellant's contention regarding the anti-Boehm atmosphere is likewise without merit. There is no evidence that would support this argument, especially in light of the well reasoned decision of the Board of Appeals. Appellant's argument with respect to the conduct of the county attorney is meritless. It is contended that the county attorney improperly acted as an appellant of the Zoning Office decision and as an adversary to appellant's application before the Board in not representing the Zoning Office. However, the county attorney's office was neither an appealing party nor an adversary; it had merely expressed concern over the conflicting evidence which had been presented to the Zoning Office and the Board.

III. *The Decision of the Board of Appeals*

Finally, we consider whether the issues were fairly debatable and the decision of the Board of Appeals supported by sufficient facts on the record so that a reasonable mind could have reached the same conclusion. The standard for review by a court of an administrative decision has been set forth many times. In *Neuman v. City of Baltimore,* 23 Md. App. 13, 14, 325 A.2d 146 (1974), a nonconforming use case, we observed:

> The general rule is that the action of a zoning board will not be reversed on appeal if there is "substantial evidence" in the record to support the

board's finding. *Luxmanor Citizens v. Burkart,* 266 Md. 631, 647, 296 A.2d 403 (1972). If such evidence does exist in the record, the matter is considered to be "fairly debatable", and the courts may not substitute their judgment for that of the board which is presumed to exercise a degree of expertise in zoning. *Agneslane Inc. v. Lucas,* 247 Md. 612, 233 A.2d 757 (1967); *Board v. Oak Hill Farms,* 232 Md. 274, 192 A.2d 761 (1963); *Largo Civic Ass'n v. Pr. Geo's Co.,* 21 Md. App. 76, 90, 318 A.2d 834 (1974). On the other hand, where the action of the board is not supported by substantial evidence the board's decision cannot be said to be "fairly debatable". Under those circumstances the board's finding falls into the category of being arbitrary, capricious and a denial of due process of law. *Dundalk Holding Co. v. Horn,* 266 Md. 280, 283, 292 A.2d 77, 78-79 (1972).

*See also, Prince George's County v. E.L. Gardner, Inc.,* 47 Md. App. 471, 424 A.2d 392 (1981) (special exceptions). It is only where there is no room for reasonable debate, or where the record is devoid of supporting facts, that a court is justified in declaring the action of the board arbitrary or discriminatory. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 105 A.2d 219 (1954).

The quantity and quality of evidence was sufficient to make the issue fairly debatable. The extensive evidence produced by each party, although conflicting, appears to be credible and without fraud. The Board chose to believe the testimony of the protestants and we shall defer to its assessment of credibility. *See, Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 390 A.2d 1119 (1978). The facts presented were sufficient to support the Board's conclusions. Testimony by the protestants questioned Boehm's assertion that the property had been used for a landfill prior to July, 1952. The adjacent property owners testified that they never saw dumping prior to the late 1960's and did not hear any trucks using the roads, noise connected with dumping

activities, nor any occasional smell of dumping. Aerial photographs failed to reveal any dumping in 1952 and tenants, hunters, loggers, and farmers using the property testified that they did not notice dumping and landfill activities during the period in question. Consequently, the Board concluded that there was "little more than sporadic dumping on a few occasions prior to July, 1952." The record supports this conclusion and we shall not substitute our judgment for that of the Board.

As to the question of whether there was substantial evidence in the record to support the Board's conclusion, we answer in the affirmative. The Board, in its findings of October 23, 1981, carefully summarized the essential testimony of each witness. Hence, it appears to have considered the entire record. As already noted, the evidence appears fairly debatable. Unlike *Neuman v. City of Baltimore, supra,* where there was not "even a scintilla of evidence . . . that a non-conforming use did not exist," the conclusions of the Board were supported by substantial evidence on the record. It would not appear unreasonable that the Board felt Boehm failed to convince it that landfilling activities occurred prior to July, 1952 in light of the quantity and quality of the protestants' testimony and evidence. By Boehm's own admission, his initial purposes in the late 1940's and early 1950's was to use his property to fill the ravines for future farming, not commercial landfilling. Hence, the Board's conclusion was reasonable.

> *Judgment affirmed; appellant to pay the costs.*